**Bayron MANNING, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–93–048–CR.

Court of Appeals of Texas,
Waco.

Oct. 27, 1993.

Bruce A. Perryman, Waco, for appellant.

John W. Segrest, Cr. Dist. Atty. and Crawford Long, Asst. Cr. Dist. Atty., Waco, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Bayron Manning appeals his conviction for the felony offense of possession of a controlled substance.[1] A jury found Manning guilty and assessed punishment, enhanced by two prior felony convictions, at seventy years in prison.

■ In point one Manning appeals the court's denial of his motion to suppress evidence, which he argues was seized as a result of an illegal search. At the pretrial hearing on Manning's motion to suppress, Randy Lanier, an officer with the Waco Police Department, testified that on August 17, 1992, he observed an automobile with an expired inspection sticker. Lanier followed the vehicle into the parking lot of Lloyd's Records. According to Lanier, Manning was the only person in the vehicle. When Lanier stopped the patrol car, he observed the following:

> When I was getting out of my car, Mr. Manning was making some motions, all I saw was from his chest on up, he was making some motions with his arms, leaning back, like he was trying to get something out of his pants, and after say about

ten seconds or so, he lunged forward, and ducked down like he was trying to put something under the seat.

After informing Manning that he was being stopped for an expired inspection sticker, Lanier discovered that Manning did not have a driver's license. Upon requesting a records check, Lanier learned that Manning was wanted on an outstanding traffic warrant. Lanier also noticed that the automobile's license plate was expired. He then issued Manning a ticket for driving a vehicle with an expired inspection sticker and license plate and for driving without a license. Manning was then arrested for the outstanding traffic warrant and placed in Lanier's patrol car.

Lanier testified that he conducted an inventory search of the vehicle pursuant to departmental policy for impoundment. During the search, Lanier found a rolled-up sock under the middle of the front seat. He unrolled the sock and discovered a bag of marijuana and some rolling papers. Inside the sock was a little brown piece of paper with about forty rocks of crack cocaine.

■ Manning argues that, because the State has not sufficiently established a lack of reasonable alternatives to justify the impoundment of his car, the inventory search was improper.[2] Lanier testified that when Manning was arrested and taken to the jail, there was no other person at the scene to whom he could release the vehicle. According to Lanier, even if there had been someone else at the scene, he could not have released the car with an expired inspection sticker and license plate because "[i]t wouldn't have been safe to drive on the street." The police need not independently investigate possible alternatives to impoundment absent some objectively demonstrable evidence that alternatives did, in fact, exist.[3] The State showed that Manning was under arrest, that he was alone, and that no one was readily available to take care of the car. Because the record does not affirmatively

---

1. See Tex.Health & Safety Code Ann. § 481.115 (Vernon 1992).

2. See *Mayberry v. State,* 830 S.W.2d 176, 179–81 (Tex.App.—Dallas 1992, pet. ref'd).

3. *Id.* at 180.

show that any other reasonable alternative existed, the State has met its burden.[4]

Even if the court erroneously concluded that Lanier's search was proper as an inventory search, however, the search was proper as a search incident to an arrest. It is well established that if a decision is correct on any theory of law applicable to the case, it will not be disturbed on appeal.[5]

In *Osban v. State*, the Texas Court of Criminal Appeals found that an officer was justified in searching the passenger compartment of the suspect's car after he had been arrested for driving without a valid license and placed in the patrol car.[6] *Osban*, however, was overruled by the court in *Heitman v. State* to the extent that it blindly followed the Supreme Court's decisions interpreting the Fourth Amendment in addressing the issue under article I, section 9, of the Texas Constitution.[7] Although Manning's brief raises the propriety of the search under the Texas Constitution, it fails to provide any substantive analysis or argument to distinguish between the level of protection provided by the state and federal constitutions.[8] Because Manning does not present any argument or authority that the propriety of the search should be resolved differently under the Texas Constitution, we need not determine whether the state constitutional protections are more expansive than that afforded by the federal constitution.[9]

The Supreme Court has held that a police officer who has made a lawful custodial arrest of the occupant of an automobile may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile, including the contents of any containers found there.[10] As did the Court of Criminal Appeals in *Osban*, we conclude that, under federal law, Officer Lanier was justified in searching the passenger compartment of Manning's car after he had been placed under arrest.[11] Because we are presented with no argument and authority suggesting that the propriety of a search incident to an arrest is subject to more stringent protections than those articulated by the Supreme Court in *Belton*, and until the Court of Criminal Appeals holds that article I, section 9, grants broader state protections in the context of a search incident to an arrest than would be afforded under the Fourth Amendment, we are constrained to follow prior Texas authority in concluding that Lanier's search of the vehicle was not an unreasonable search under either the federal or state constitutions.[12] Accordingly, we overrule point of error one.

In point two Manning contends that the evidence is insufficient to support his conviction for possession of a controlled substance. In reviewing the legal sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[13]

Knowing or intentional possession is established if the state proves beyond a reasonable doubt that the accused exercised care, custody, control, or management of the

4. *See id.* .

5. *Calloway v. State* 743 S.W.2d 645, 651–52 (Tex. Crim.App.1988).

6. 726 S.W.2d 107, 111 (Tex.Crim.App.1986).

7. *See Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim.App.1991), *on remand*, 836 S.W.2d 840, 842–433 (Tex.App.—Fort Worth 1992, no pet.).

8. *See id.* at 690–91 n. 23.

9. *See Muniz v. State*, 852 S.W.2d 520, 521 (Tex. Crim.App.1993); *Santikos v. State*, 836 S.W.2d

631, 632 n. 1 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 600, 121 L.Ed.2d 537 (1992).

10. *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981).

11. *See Osban*, 726 S.W.2d at 111.

12. *See Cullen v. State*, 832 S.W.2d 788, 795 (Tex. App.—Austin 1992, pet. ref'd); *Brown v. State*, 830 S.W.2d 171, 174 (Tex.App.—Dallas 1992, pet. ref'd).

13. *See Geesa v. State*, 820 S.W.2d 154, 156–57 (Tex.Crim.App.1991) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

controlled substance, knowing that it was a controlled substance.[14] If the accused is not in exclusive possession of the place where the substance is found, the state must affirmatively link the controlled substance to the accused.[15] An affirmative link can be established by showing additional facts and circumstances from which the jury may reasonably infer that the accused knew of the controlled substance and that he exercised care, custody, control, or management over it.[16] Among such additional facts and circumstances are: the accused was the driver of the automobile where the controlled substance was found, it was in close physical proximity to the accused, the accused attempted to conceal something, and the controlled substance was found under the car seat where the accused was sitting.[17]

Viewed in the light most favorable to the verdict, the evidence shows that Manning was the driver of the vehicle; that he removed something from his pants and, leaning forward and to his right, put it under the front seat; and that the only thing Officer Lanier found under the seat was a sock containing marihuana and crack cocaine, in the area where he had seen Manning leaning forward. As a result, we conclude that the jury, as a rational trier of the facts, could have found the essential elements of the crime beyond a reasonable doubt.[18] Accordingly, we overrule point of error two.

■■■ In point three Manning contends that the failure of the State's expert witness to produce a *written report concerning the* chemical analysis performed on the controlled substance denied him the right to a fair trial. Manning's brief, however, fails to make any reference to the record indicating

that he properly requested production of such a report. Neither does he offer any argument or authorities supporting his contention that a written report was necessary to effectively cross-examine the chemist who testified for the State. Consequently, we overrule point of error three.[19]

■■■ In point four Manning contends that, because the indictment charged that he "did then and there intentionally *and* knowingly possess a controlled substance," the court erred in instructing the jury to find him guilty if they found that he "did intentionally *or* knowingly possess a controlled substance." (Emphasis added). The Court of Criminal Appeals has long approved the practice of pleading alternative elements of an offense conjunctively and submitting them disjunctively whenever the statutory language is disjunctive.[20] Therefore, the State properly charged the requisite culpable mental states for possession of a controlled substance conjunctively in the indictment.[21] Because the court did not err in charging the alternative culpable mental states of the offense in the disjunctive, we overrule point of error four.

■■■ In point five Manning contends that the court erred in denying his motion for mistrial following the State's improper jury argument. The prosecutor made the following closing argument during the guilt-innocence phase of the trial:

[Prosecutor]: What you just heard was a smoke screen that the defense uses to try to get you to thinking about things that really don't matter. I wrote down those things that I want to cover real quickly with you, as to why they are not reasonable. He said there was no lab report put into evidence. He has seen the lab report,

**14.** *Dickey v. State,* 693 S.W.2d 386, 389 (Tex. Crim.App.1984); Tex Health & Safety Code Ann. § 481.002(38).

**15.** *Deshong v. State,* 625 S.W.2d 327, 329 (Tex. Crim.App. [Panel Op.] 1981).

**16.** *Dickey,* 693 S.W.2d at 389; *Deshong,* 625 S.W.2d at 329.

**17.** *Aldridge v. State,* 482 S.W.2d 171, 174 (Tex. Crim.App.1972); *Brazier v. State,* 748 S.W.2d 505, 508 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

**18.** *See Geesa,* 820 S.W.2d at 156–57.

**19.** *See Phillips v. State,* 511 S.W.2d 22, 26 (Tex. Crim.App.1974); *See* Tex.R.App.P. 74(d), (f).

**20.** *Rogers v. State,* 774 S.W.2d 247, 251 (Tex. Crim.App.), *cert. denied,* 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989).

**21.** *See Nickerson v. State,* 782 S.W.2d 887, 891 (Tex.Crim.App.1990).

but the law says you can't put a piece of paper into evidence.

[Defense Counsel]: I am going to object to that, I haven't seen a lab report.

COURT: I sustain the objection.

[Prosecutor]: Move that the jury be instructed—

COURT: I will instruct the jury they will disregard the last statement of counsel for the State, whereby he said that the State could not put the lab report into evidence.

[Defense Counsel]: Move for a mistrial, your Honor.

COURT: Overruled.

 Proper jury argument falls within one of the following categories: (1) a summary of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument; or (4) a plea for law enforcement.[22] All other arguments are improper. Although the prosecutor was entitled to answer the defense attorney's argument, for a prosecutor to argue outside the record is improper.[23] As a result, the trial court properly sustained Manning's objection to the prosecutor's comment—"He has seen the lab report, but the law says you can't put a piece of paper into evidence."

 However, when the trial court instructs the jury to disregard the improper argument but denies the defendant's motion for mistrial, error results only when the argument is extreme, manifestly improper, injected new or harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that its prejudicial effect could not reasonably be removed from the minds of the jurors by the instruction given.[24] In its brief, the State posits that the prosecutor incorrectly relied upon *Cole v. State*[25] for the proposition that the lab report was not admissible. The State also argues that the prosecutor was attempting to correct the defense attorney's misleading assertion that the jury could not base a conviction on the chemist's testimony without a written report. The prosecutor did not repeat the improper argument, but, instead, directed the jury's attention back to the testimony from the witness stand. Based on our examination of all the jury arguments, we hold that the court's instruction to disregard the prosecutor's comment was sufficient to remove the prejudicial effect of the improper argument from the minds of the jurors; thus, no error occurred in denying the motion for mistrial.[26] We overrule point of error five.

 In point six Manning contends that the trial court erred in denying his motion for mistrial following improper comments made by the prosecutor during opening statement. After introducing the facts of the stop, search, and arrest, the prosecutor made the following remarks:

... Officer Lanier will also tell you that when he first approached the defendant, he was extremely nervous. Even after he told him that he was just going to give him a citation, he was still very very nervous. The reason he was very very nervous was because he had 40 rocks of Cocaine.

[Defense Counsel]: I object to that, your Honor, that is entirely speculation.

COURT: I sustain the objection, and instruct the jury they will disregard the last statement of counsel for any purpose whatsoever.

[Defense Counsel]: Move for a mistrial, your Honor.

COURT: Overrule the Motion at this time.

[Prosecutor]: That is what the Officer will testify to. . . .

---

22. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim.App.1973).

23. *See Boyd v. State*, 643 S.W.2d 700, 706 (Tex. Crim.App. [Panel Op.] 1982).

24. *Washington v. State*, 822 S.W.2d 110, 118 (Tex.App.—Waco 1991), *rev'd on other grounds*, 856 S.W.2d 184 (Tex.Crim.App.1993).

25. 839 S.W.2d 798, 810 (Tex.Crim.App.1992) (on rehearing).

26. *See Washington*, 822 S.W.2d at 120.

■ The prosecutor's opening statement should inform the jury of "the nature of the accusation and the facts which are expected to be proved by the State in support thereof." [27] At trial Officer Lanier testified that, even after informing Manning that he had been stopped for an expired inspection sticker, "he still stayed nervous." Because Manning's nervousness was admissible as circumstantial evidence of his knowing possession, the prosecutor's remarks concerning his nervousness were not improper. [28] But inferring that Manning was nervous because he possessed cocaine went beyond the scope of proper opening statement. During closing argument, however, the prosecutor properly inferred, as a reasonable deduction from the evidence, that Manning was nervous because he possessed cocaine. [29] Having reviewed the entire record, we are unable to conclude that the offending remarks were so prejudicial as to deny Manning a fair trial. [30] We hold that the court's instruction to disregard the prosecutor's comment was sufficient to remove the prejudicial effect of the improper opening statement from the minds of the jurors; thus, no error occurred in denying the motion for mistrial. As a result, we overrule point of error six.

■ In point seven Manning contends that the court erred in denying his request to have his jail identification bracelet removed. At a recess during voir dire, just before the defense attorney began his examination of the jury, he asked that Manning's identification bracelet be removed, "because there may be some prejudice if the jurors see this, that they would assume that he's been incarcerated and somehow infer guilt from that." In denying Manning's request, the court noted: "Well, I've seen the bracelet, and it doesn't look obtrusive to me. It doesn't look like it's going to—would cause any problem

whatsoever." Initially, we note that Manning failed to preserve his complaint at the earliest possible opportunity. [31] Instead, the prosecutor had already completed his voir dire examination of the jury before Manning requested that the bracelet be removed. Furthermore, Manning has failed to direct our attention to any place in the record showing that the jury actually saw the identification bracelet, either before or after he asked that it be removed, or that it in any way influenced their deliberations or verdict. Therefore, we cannot conclude that Manning was harmed by the use of the jail identification bracelet. [32] Accordingly, we overrule point of error seven.

■ In point eight Manning contends that the trial court erred in overruling his objection to the admission, during the punishment phase of the trial, of two penitentiary files, or "pen packets." Specifically, he contends that the pen packets were not properly authenticated because the certificate of authentication was signed with the county judge's signature stamp rather than his actual signature. Again, Manning cites no authority on point. Indeed, the Court of Criminal Appeals has held that a pen packet is sufficiently authenticated in accordance with Rules 901 and 902(4) of the Texas Rules of Criminal Evidence if the authenticity of the pen packet copies of the judgment and sentence is certified by the Texas Department of Criminal Justice–Institutional Division record clerk. [33] Because the pen packets were properly authenticated by the TDCJ–ID record clerk, Manning's complaint regarding the county judge's signature is without merit. Furthermore, the identical contention regarding the use of a signature stamp to authenticate a public record was rejected by the Court of Criminal Appeals in *Brooks v.*

27. Tex.Code Crim.Proc.Ann. art. 36.01(a)(3) (Vernon Supp.1993).

28. *See Watts v. State*, 630 S.W.2d 737, 738 (Tex. App.—Houston [1st Dist.] 1982, no pet.).

29. *See Alejandro*, 493 S.W.2d at 231.

30. *See Sweaney v. State*, 632 S.W.2d 932, 935 (Tex.App.—Fort Worth 1982, no pet.)

31. *See* Tex.R.App.P. 52(a).

32. *See Long v. State*, 823 S.W.2d 259, 283 (Tex. Crim.App.1991), *cert. denied,* — U.S. —, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992).

33. *Reed v. State*, 811 S.W.2d 582, 587 (Tex.Crim. App.1991).

*State.*[34] As a result, we overrule point of error eight.

We affirm the judgment.

**34.** 599 S.W.2d 312, 323 (Tex.Crim.App.1979), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981); *see also Logan v. State,* 720 S.W.2d 669, 672 (Tex.App.—San Antonio 1986, no pet.).