Aldrete v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-089-CR

     FEDERICO DELGADO ALDRETE,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS
                                                                                              Appellee
 

From the 249th District Court
Johnson County, Texas
Trial Court # 28813
                                                                                                    

O P I N I O N
                                                                                                    

      A jury found Federico Aldrete guilty of delivery of marihuana and, as a result of
enhancement, assessed punishment at eighty-five years. Aldrete argues that the evidence is
insufficient to support his conviction. He also contends that the court erred in allowing a
particular juror to be struck for cause, in admitting a videotape, and in admitting a penitentiary
packet. We affirm.
      On May 22, 1992, undercover officer David Blankenship met Jose Guzman at the Five Star
Inn in Johnson County. The meeting was arranged so that Blankenship could buy forty pounds
of marihuana from Guzman's friend, "Bobby." Blankenship later learned that "Bobby" is Aldrete. 
      On the day of the meeting, Blankenship arrived at the motel around 4:00 p.m. About an hour
later Guzman arrived with Michael Salings in a Chevrolet Malibu. Salings was "passed out,"
asleep, in the back seat of the car. Subsequently, Aldrete and Jesse Flores arrived at the motel in
a brown Oldsmobile station wagon. 
      When Aldrete entered the motel room he placed a plastic bag containing one pound of
marihuana on the bed. Aldrete provided this bag of marihuana to Blankenship as a sample from
the forty-pound load. Blankenship and Aldrete negotiated the price of the marihuana. The total
price for the forty pounds of marihuana was $34,000.
      Gary Arnold, a task force investigator, located some distance away from the motel,
videotaped the outside of the room. This videotape was admitted before the jury. Blankenship
wore a concealed microphone and transmitter during his meeting with Aldrete, and the
conversations inside the room were simultaneously recorded on the audio portion of the videotape.
      Blankenship made a phone call to have the money brought to the motel. While Blankenship,
Aldrete, Guzman, and Flores waited, two undercover officers, Cartwright and Brasier, drove up
and stopped their pickup truck outside the motel room. Aldrete left the room and walked to the
undercover officer's truck and was shown some money in a bag. Cartwright got out of the truck
and went into the room. Brasier left in the truck with the money. 
      Blankenship and Aldrete disagreed about where to make the delivery. Aldrete did not want
to deliver the marihuana to the motel. Aldrete, Guzman, and Flores discussed whether the
delivery should be made to the motel. Finally, Blankenship asked, "Who's in charge here?" 
Aldrete said, "I'm the one making the decisions." Aldrete finally agreed to complete the delivery
to the motel.
      Flores left the motel in the Oldsmobile station wagon to retrieve the rest of the marihuana. 
After a short time, Flores returned in a four-door Oldsmobile sedan. Guzman and Flores unloaded
an ice chest and a brown travel bag out of the vehicle's trunk and took them into the motel room. 
They placed the containers at the foot of a bed. Inside the ice chest and travel bag were large trash
bags containing smaller one-pound bags of marihuana.
      Once he was satisfied that the marihuana delivered was sufficient, Blankenship called on the
phone to have the purchase money brought to the room. This call was a prearranged signal to the
other officers that the marihuana had been delivered. When the officers arrived everyone in the
motel room was arrested.
      In his first point, Aldrete complains that the evidence is insufficient to sustain his conviction. 
He contends that there is no evidence that he actually handled, possessed, controlled, or delivered
the marihuana to Blankenship. Aldrete testified that he came from his home in Del Rio to Flores'
house in Fort Worth to buy cars, not to sell marihuana. He said that he first learned that Flores
or Guzman were going to sell marihuana the day of the arrest. Aldrete said that Flores and
Guzman needed a ride to the motel, so he took them.
      In reviewing the sufficiency of the evidence, we must decide whether, after viewing the
evidence in the light most favorable to the verdict, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. See Geesa v. State, 820 S.W.2d 154,
156-57 (Tex. Crim. App. 1991). The Code of Criminal Procedure provides that reconciliation
of conflicts and contradictions in the evidence is within the province of the jury. Tex. Code
Crim. Proc. Ann. art. 38.04 (Vernon 1979); Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim.
App. 1986). The jury may believe some witnesses and refuse to believe others, and it may accept
portions of a witness' testimony and reject other portions. Losada, 721 S.W.2d at 309. On
appeal, we will not reverse a conviction because of conflicts in the evidence if there is enough
credible evidence to support the conviction. See id.
      Aldrete arrived at the motel room with a sample bag of marihuana for Blankenship to inspect. 
In addition, he negotiated the price for the sale, examined the purchase money, and negotiated the
place of delivery. Aldrete claimed that he was only at the motel because Flores and Guzman
needed a ride. Aldrete's claim conflicts with the State's evidence. The jury chose to believe the
State's witnesses and could have found from the evidence that Aldrete delivered the marihuana. 
See Losada, 721 S.W.2d at 309; also Nevarez, 767 S.W.2d at 768-69. Thus, the evidence was
sufficient for a rational fact-finder to have found beyond a reasonable doubt that Aldrete
committed the essential elements of actual or constructive delivery less than fifty and more than
five pounds of marihuana. 
      In his second point, Aldrete argues that the court erred in excusing Sharon Crocker for cause
from the jury panel. During voir dire the prosecution told the panel that the range of punishment
for delivery of marihuana is 5 to 99 years or life and asked potential jurors whether they had a
problem with punishment. Crocker, after questioning by the prosecution, defendant's counsel,
and the court, stated that she could not consider life as punishment for the offense. The State then
challenged her for cause and the court dismissed her.
      The state may challenge for cause a juror who indicates that she has a bias or prejudice against
any phase of the law upon which the state is entitled to rely for conviction or punishment. Tex.
Code Crim. Proc. Ann. art. 35.16(b)(3) (Vernon Supp. 1994). Thus, a venireperson who
demonstrates an inability to consider the full range of punishment is subject to challenge for cause. 
See Havard v. State, 800 S.W.2d 195, 201 (Tex. Crim. App. 1989). The conduct of voir dire
examination is within the sound discretion of the trial court. Dowden v. State, 758 S.W.2d 264,
274 (Tex. Crim. App. 1988).
      In deciding on the propriety of the court's ruling on challenges for cause during voir dire, we
keep in mind that the trial judge has had the opportunity to observe the tone of voice and demeanor
of the prospective juror in determining the precise meaning intended, while we have only the "cold
record." See Briddle v. State, 742 S.W.2d 379, 384 n.1 (Tex. Crim. App. 1987). Upon
examining the record we find no abuse of discretion. We overrule point two.
      In his third point Aldrete argues that the court erred in admitting the videotape.


 He contends
that portions of the videotape were inaudible, that all speakers on the tape were not identified, that
it contained hearsay, and that it referred to extraneous offenses.
      Prior to the meeting between Blankenship, Aldrete, Flores, and Guzman, officer Gary Arnold
set up a video camera outside the motel room to record who entered and left the room. Arnold
testified that he had used the video camera many times before and was skilled and capable of
operating it. He also stated that the camera was capable of making both video and audio
recordings. After he was through recording, Arnold removed the tabs on the cassette so that the
tape could not be altered. He stored the tape in the task force property room. After viewing the
tape, Arnold testified that it had not been altered in any way and that it was a fair and accurate
representation of what he saw and heard on May 22, 1992. Neither Arnold nor Blankenship
identified the voices on the tape as it was being played for the jury; however, as the tape was
introduced as an exhibit, the prosecutor identified for the jury all of the persons whose voices
would be heard on the tape.
      Aldrete's objection that the audio portion of the tape was too inaudible to be played went to
the weight of the evidence, not its admissibility. Furthermore, Aldrete's out of court statements
are not hearsay because he is a party opponent. See Tex. R. Crim. Evid. 801(e)(2). Also,
Aldrete does not claim and has not demonstrated that the tape contains extraneous offenses that
are attributable to him.
      In Stapleton v. State, the Court of Criminal Appeals ruled that the germane rules of criminal
evidence have incorporated the seven-pronged test of Edwards v. State to determine admissibility
of electronically recorded evidence. Stapleton v. State, No. 471-93, slip. op. at 6-9 (Tex. Crim.
App. October 27, 1993); Edwards v. State, 551 S.W.2d 731, 733 (Tex. Crim. App. 1977). 
      The admission of videotapes and audio recordings is authorized by the Rules of Criminal
Evidence. Tex. R. Crim. Evid. 1001(1), (2). Rule 901 provides that authentication or
identification of items offered into evidence "is satisfied by evidence sufficient to support a finding
that the matter in question is what its proponent claims." Id. 901(a). Among the examples of
identification given in the rule is identification of a voice, whether heard first hand or through
mechanical or electronic transmission or recording, by opinion based upon hearing the voice at
any time under circumstances connecting it with the alleged speaker. Id. 901(b)(5).
      Rule 901(b)(5) was taken from the federal rule bearing the same number. In the case of
United State v. Vega, 860 F.2d 779, 792 (7th Cir. 1988), a federal court construed this rule and
made the following ruling:
With respect to the tapes containing voices of speakers . . ., who were not specifically
identified at trial, if the government's case does not depend upon any claim concerning
the identity of that speaker, the tape can be admitted even in the absence of an
identification of that speaker. 
Assuming that the court erred when it admitted the tape without each voice being identified while
the tape was being played, the question is whether such error is harmless. See Tex. R. App. P.
81(b)(2).
      Blankenship testified without objection that Aldrete said he was in charge, that Aldrete
negotiated the price of the marihuana, and that Aldrete agreed to conduct the sale at the motel. 
He also testified without objection what other parties said in the motel room during the transaction. 
Thus, evidence of Aldrete's and other parties' statements were already admitted before the tape
was played for the jury. Considering the evidence presented by the tape, in light of all the
evidence presented, we find beyond a reasonable doubt that any error in admitting the tape without
identifying the voices on it did not contributed to Aldrete's conviction or punishment. See id. We
overrule the third point. 
      In his fourth point Aldrete contends that the court erred in admitting a penitentiary packet
reflecting his prior conviction for delivery of cocaine because it fails to show that the conviction
was final because of a pending appeal. See Tex. R. Crim. Evid. 609(e). However, the
commitment order in the pen packet reflects that a mandate was issued by the San Antonio court
of appeals, thus making the judgment final. See Russell v. State, 790 S.W.2d 655, 657 (Tex.
Crim. App. 1990). We overrule the fourth point and affirm the judgment.
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed March 30, 1994
Do not publish



nce admitted, the results of a breath test taken one hour after
appellant’s accident were sufficient evidence of alcohol concentration at the time of the accident to
support a charge defining intoxication as having alcohol concentration of 0.10 or more. 905
S.W.2d 434, 439 (Tex. App.—Waco 1995, pet. ref’d).
      Mott, a DPS chemist, testified that the results of Stinson’s blood specimen taken thirty minutes
after arrest showed a blood alcohol content of 0.22. Applying the general reasoning of Owen and
viewing Mott’s testimony in the light most favorable to the prosecution, we hold that the jury could
have inferred from the results of the blood test taken less than an hour later, that Stinson had an
alcohol concentration of 0.10 or more at the time he was stopped. Id.; see Forte v. State, 707
S.W.2d 89, 94-95 (Tex. Crim. App. 1986). Stinson’s third point is overruled. 
Did the State Engage in Improper Jury Argument?
      In Stinson’s second point of error, he contends the State committed improper jury argument. 
During his closing argument, Stinson suggested that there was an error in his blood alcohol testing. 
Then, the State, in its rebuttal, referred to Stinson’s failure to produce “independent” evidence. 
The State’s referral pertained to blood drawn from the same vial for independent testing but never
introduced at trial. Stinson subsequently objected to this argument by the State. The trial judge
sustained Stinson’s objection. Following this objection, Stinson failed to request a curative
instruction or motion for mistrial.
      To preserve a complaint for appellate review, a party must object until he receives an adverse
ruling. Tex. R. App. P. 33.1(a); Harris v. State, 784 S.W.2d 5, 12 (Tex. Crim. App. 1989); see
Hernandez v. State, 914 S.W.2d 226, 230 (Tex. App.—Waco 1996, no pet.). A party properly
pursues a complaint to an adverse ruling by: (1) objecting, (2) requesting an instruction to
disregard, and (3) moving for a mistrial. Brooks v. State, 642 S.W.2d 791, 798 (Tex. Crim. App.
1982).
      In the case at bar, the trial court sustained Stinson’s objection to the State’s closing argument. 
However, Stinson’s failure to request that the jury disregard the previous statements and 
subsequently move for a mistrial leaves nothing for this court to review. Stinson’s second point
of error is overruled.
Was There a Fatal Variance Between the 
Information and the Jury Charge?
      In Stinson’s fourth point, he argues that there was a fatal variance between the information and
the jury charge. Stinson alleges that a fatal variance occurred because the charge allowed the jury
to convict if it found Stinson had a loss of physical or mental faculties or blood alcohol level of
0.10 or greater, while the information alleged a loss of physical or mental faculties and blood
alcohol level of 0.10 or greater. 
      An indictment may plead alternative methods of committing an offense conjunctively, but the
charge may properly instruct the jury in the disjunctive to allow a conviction “if the evidence is
sufficient to support a finding under any of the theories submitted.” McDuff v. State, 939 S.W.2d
607, 614 (Tex. Crim. App. 1997); Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App.
1991); Manning v. State, 864 S.W.2d 198, 202 (Tex. App.—Waco 1993, pet. ref’d).
      Even though the information charged Stinson with DWI in the conjunctive, it was not improper
for the jury to be charged in the disjunctive and instructed to convict Stinson if they found that he
was intoxicated due to a loss of his mental or physical faculties or because he had a blood alcohol
level of 0.10 or greater. Furthermore, as discussed above, there was sufficient evidence to allow
the jury to convict Stinson of DWI under either theory. Consequently, we hold that there was no
fatal variance between the information and the jury charge because the State may conjunctively
plead two methods of committing the offense of driving while intoxicated in the indictment but
instruct the jury on these two methods in the disjunctive. Stinson’s fourth point is overruled.
      The judgment is affirmed.
 
 
 
                                                                         BOBBY L. CUMMINGS
                                                                         Justice
 
Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed February 4, 1998
Do not publish