NO. 07-01-0107-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



DECEMBER 30, 2002


______________________________



DAVID MEDINA
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 43028-E; HON. ABE LOPEZ, PRESIDING


_______________________________



Before QUINN and REAVIS, JJ., and BOYD, SJ. (1)

 David Medina appeals his conviction for delivering a controlled substance. The jury
assessed punishment after he pled guilty to the charge. His sole point of error involves
due process. That is, he contends that he was denied due process and a fair trial since
the "State failed to allow [him] to take a shower or sleep on anything other than concrete
prior to the [punishment] hearing" and the trial court "would not allow him to explain his
appearance to the jury." We overrule the issue and affirm the judgment.

 After pleading guilty and before commencement of the punishment phase of the
trial, appellant was taken into custody. He spent the evening in jail and slept on a concrete
bench. This allegedly prevented him from obtaining a restful night's sleep. So too was he
denied an opportunity to shower before appearing in court the next day. However, this
situation was not made known to either counsel for appellant or the trial court until after
appellant appeared at the punishment hearing, testified on his own behalf, called other
witnesses to testify, and rested his case. By that time, the trial court had not only informed
the jury that testimony in the punishment phase had concluded, but also solicited
comments from counsel upon the proposed jury charge.

 When inquiry was made by the trial court into the situation, appellant was asked
whether he had "anything that [he] would like to tell the jury . . . that you did not tell them
because of the conditions that [he] testified to . . .?" Appellant answered: "No, sir." Later, 
appellant reiterated that there was nothing else he wanted to tell the jury other than to
explain his physical appearance. Absent from the record, however, is any testimony or like
evidence describing appellant's appearance. And, though he thought that a good night's
sleep and a shower may have enabled him to "project[] a better image to the jury, we are
directed to nothing in the record which indicates that his appearance (whatever its state
may be) influenced the jury's verdict.

 Authority recognizes that the appearance of an accused may impact upon his
constitutional right to a fair trial. See e.g., Randle v. State, 826 S.W.2d 943, 944 (Tex.
Crim. App. 1992). Yet, complaint about a purported infringement of that right must be
raised in a timely manner. Manning v. State, 864 S.W.2d 198, 204 (Tex. App.-Waco
1993, pet. ref'd) (wherein Manning failed to object to wearing a jail identification bracelet
until after voir dire began). And, it is timely if urged at the earliest available opportunity. 
Id.; Lusk v. State, 82 S.W.3d 57, 60 (Tex. App.-Amarillo 2002, pet. ref'd) (stating that an
objection must be urged at the earliest opportunity to enable the trial court to correct the
circumstance). Here, the complaint was not raised until the conclusion of the punishment
phase of the trial and after appellant had already testified. Waiting to complain until after
the jury has seen the appellant is not the earliest opportunity. See e.g., Manning v. State,
864 S.W.2d at 204. Thus, appellant did not adequately preserve his complaint for appeal.

 Next, as appellant explicitly states in his brief, "it is the failure of the trial court to at
least have permitted appellant an opportunity to explain his physical state, including his
personal appearance, which is appealed." In other words, the issue before us involves his
physical appearance and its potential impact upon the jury. Given this, logic dictates that
before we can assess that potential impact, we must have some evidence from which we
can determine his appearance. Yet, there is none of record. We do not know if he was
disheveled, dirty, discomposed or the like. We are simply told that he slept on a concrete
bench and was denied a shower. Whether those circumstances adversely affected his
appearance to an extent depriving him of a fair trial is utter speculation. And, we cannot
reverse a judgment based upon speculation. Simply put, appellant has not presented us
with a record sufficiently illustrating reversible error.

 Accordingly, the judgment is affirmed.

 

 Brian Quinn

 Justice


Do not publish. 

1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code
Ann. §75.002(a)(1) (Vernon Supp. 2002). 


O. 2 OF POTTER COUNTY;

NO. 122447-2; HON. PAMELA SIRMON, PRESIDING
_______________________________

Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
          The State of Texas appeals from the trial court’s order granting Joe Ellis Patterson’s
motion to suppress evidence. Patterson was indicted for possessing a controlled
substance (marijuana) in a drug free zone. The State argues that the trial court erred in
granting the motion because Patterson’s detention was based on either a reasonable belief
or probable cause to conclude that he had committed a traffic violation. We reverse the
trial court’s order.
          Background
          On July 29, 2008, police officer Mike Sanchez observed Patterson walking
westbound on Southwest Fourth Avenue on the road’s surface. There were no sidewalks
adjacent to that part of the street. Rather than walk on the left side of the surface to face
oncoming traffic, Patterson walked on the right side with the traffic to his back. Believing
this to be a violation of an Amarillo municipal ordinance, Sanchez stopped Patterson and
asked for identification. Patterson had none on his person. The officer decided to place
Patterson in his squad car while he attempted to determine his identity and subjected him
to a pat-down search before doing so. Additionally, Patterson consented to the search of
his pockets.


 The latter revealed the presence of marijuana. 
          Patterson moved to suppress discovery of the contraband by contending that his
initial detention was unlawful. That is, he believed that the officer lacked both reasonable
suspicion and probable cause to stop him as he walked on the street. This allegedly was
so because the ordinance the officer relied upon to initiate the stop was inapplicable. The
trial court agreed. 
          Standard of Review
          The standard by which we review the trial court’s ruling on a motion to suppress is
set forth in Ford v. State, 158 S.W.3d 488 (Tex. Crim. App. 2005). Although we afford
deference to the trial court’s interpretation of historical facts, we do not give the same
deference to its application or interpretation of the law. Id. at 493. 
 
          Analysis
          Sanchez testified that he stopped Patterson for violating an Amarillo municipal
ordinance prohibiting one from walking in the street with his back to traffic. The ordinance
in dispute stated that: “Where sidewalks are not provided any pedestrian walking along
and upon a highway shall when possible walk only on the left side of the roadway or its
shoulder facing approaching traffic.” Amarillo, Tex., Mun. Code ch. 16-3 , art. VII, §16-3-313(b) (2006). Additionally, the term “highway” was defined in the ordinance as: “A
highway divided into two (2) roadways by leaving an intervening space, or by a physical
barrier, or by a clearly indicated dividing section between the two (2) roadways.” Id. art.
VII, §16-3-2 (1988). Because Southwest Fourth Avenue did not have any such intervening
space, physical barrier, or clearly indicated divider, the trial court determined that the traffic
law relied on by the officer was inapplicable and, therefore, he had no legitimate basis for
stopping Patterson.


 
          In ruling as it did, the trial court implicitly rejected the State’s contention that, while
the local ordinance may not apply, a Texas statute regulating the same matter did. The
Texas statute not only made it illegal to walk atop a highway’s surface with one’s back to
traffic when no sidewalk is available, Tex. Transp. Code Ann. §§552.006(a)-(b) (Vernon
Supp. 2009), but also defined “highway” differently. Under the state code, “highway” meant
“the width between the boundary lines of a publicly maintained way any part of which is
open to the public for vehicular travel.” Id. §541.302(5) (Vernon 1999). Unlike the local
ordinance, the state definition says nothing about a need for the presence of an intervening
space, physical barrier, or clearly indicated divider. So, while it may be that Patterson did
not violate the ordinance, the officer purportedly had reasonable suspicion or probable
cause to believe that the Transportation Code provision was violated, and, therefore, he
had basis to undertake the detention. We agree with the prosecution.
           It has long been true that a traffic violation can constitute a reasonable basis for a
detention. Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d
89 (1996). Indeed, reasonable suspicion that such a violation occurred permits an officer
to stop the suspect. Bynes v. State, No. 07-08-0207-CR, 2009 WL 1107987, at *2 (Tex.
App.–Amarillo April 24, 2009, no pet.) (mem. op., not designated for publication); see
Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (holding that reasonable
suspicion does not require absolute certainty that an offense was committed). And,
because the presence of reasonable suspicion is an objective standard, the subjective
intent of the police officer undertaking the stop is irrelevant. Garcia v. State, 43 S.W.3d
at 530. In other words, the subjective reasons uttered by the officer to legitimize the stop
have no bearing on the outcome if the totality of the circumstances nonetheless would lead
a police officer to reasonably suspect that crime is afoot. Id. at 530; accord, Singleton v.
State, 91 S.W.3d 342, 347 (Tex. App.–Texarkana 2002, no pet.) (noting that an objectively
valid stop can be upheld even though it was made for the wrong reason); Russ v. State,
No. 02-05-270-CR, 2006 WL 668729, at *3 n.4 (Tex. App.–Fort Worth March 16, 2006, pet.
ref’d) (mem. op., not designated for publication) (noting that the trial court need not limit
its review to the violations the officer cited in executing the stop); Arriaga v. State, No. 03-03-00097-CR, 2003 WL 22023577, at *2 (Tex. App.–Austin August 29, 2003, no pet.)
(mem. op., not designated for publication) (stating the same). 
          Here, the trial court expressly found that 1) Patterson was “walking on the right side
of the roadway facing away from approaching traffic” and 2) there were “no sidewalks, lane
markings, or curbs on [the] portion” of the street. Given that §§552.006(a)-(b) of the Texas
Transportation Code mandated that where there was no sidewalk, “a pedestrian walking
along and on a highway shall if possible walk on . . . the left side of the roadway” or on “the
shoulder . . . facing oncoming traffic” and Patterson did neither, circumstances existed
which allowed an officer to reasonably conclude that Patterson had committed a traffic
offense. It did not matter that the officer at bar initially indicated that he based the stop
upon what ultimately appeared to be an inapplicable municipal ordinance. Again, this is
so because the totality of the circumstances was enough to create both probable cause
and reasonable suspicion to believe that §552.006 of the Transportation Code had been
violated.
          To the extent Patterson suggests that Amarillo’s ordinance superceded §552.006,
he is mistaken. Our legislature declared that a “local authority may not enact or enforce
an ordinance or rule that conflicts with” subtitle C of title 7 of the Transportation Code
“unless expressly authorized by” that same subtitle. Tex. Transp. Code Ann. §542.201
(Vernon 1999). A municipality, such as the City of Amarillo, falls within the umbrella of a
“local authority.” Id. §541.002(3)(A). Furthermore, §552.006 appears under subtitle C of
title 7 of the Transportation Code. So, §542.201 controls at bar. 
          Also, Amarillo’s definition of “highway” can be read as conflicting with the definition
of the same term mentioned in §541.302(5) of the Transportation Code. That is, while the
latter prohibits walking with one’s back to traffic, the former does not so long as there is no
intervening space, physical barrier, or clearly marked divider on the roadway. This leads
us to conclude, especially since we have been cited to nothing in subtitle C of title 7 of the
Transportation Code indicating otherwise, that Amarillo’s provision must give way.



          Accordingly, the trial court erred in granting the motion to suppress. So, we reverse
that order and remand the cause for further proceedings.                                        
                                                                                      Brian Quinn 
                                                                                     Chief Justice 
Publish.