**Jamal Anton REED, Appellant,**

v.

**The STATE of Texas, State.**

**Nos. 2–95–128–CR, 2–95–129–CR.**

Court of Appeals of Texas,
Fort Worth.

July 25, 1996.

Rehearing Overruled Oct. 10, 1996.

**33.** *Id.*

Michael W. Berg, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall, Charles M. Mallin, Asst. Chief Appellate Sec., Debra Ann Windsor, Tim Bednarz, David Hudson, Asst. Crim. Dist. Attys., Fort Worth, for State.

Before CAYCE, C.J., and DAY and DAUPHINOT, JJ.

## OPINION

DAUPHINOT, Justice.

Appellant Jamal Anton Reed was charged by indictment with aggravated sexual assault with a deadly weapon and aggravated robbery with a deadly weapon. Upon his plea of not guilty, the jury convicted him in each case, and in each case sentenced him to eighty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Reed appeals, raising three points of error. He asserts that the trial court erred (1) in permitting the complainant to identify Reed in court by physical description only, (2) in sustaining the State's objection to Reed's inquiry to probable cause for his arrest, and (3) by denying Reed's motion to suppress his statement. We affirm.

### IDENTIFICATION

The complainant was asked to describe the masked men who burglarized her apartment and sexually assaulted her. The State then elicited the following testimony:

Q. Okay. Let me ask you, does the gentleman sitting to my far right, does he appear to be about the same size as the two men who were in your apartment that night?

A. He appears to be about the same size as one of them.

Q. Okay. And for the record, could you point to the man that you are indicating.

A. This gentleman here (indicating).

Reed objected immediately after this testimony, stating:

Your Honor, I'll object to this identification. This is not an identification. She is merely indicating that the person is about the same size and weight. I am objecting to her singling him out as an identification, Your Honor.

 To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.[1] If a party fails to do this, error is not preserved, and the complaint is waived.[2] Objection must be made as soon as the basis for the objection becomes apparent.[3] Additionally, an objection must be specific, and the objection preserves only the specific grounds cited.[4] If counsel objects on an incorrect ground at trial and is overruled, but later cites the correct ground to the appellate court, it will be too late.[5]

 In the case before us, we find that defense counsel's objection was not timely. It did not occur until the identification was complete, although the ground for the objection was apparent as soon as the first question was asked. Because Reed's objection was neither timely nor did it state clearly the specific ground for the objection, Reed has preserved nothing for review. Reed's first point of error is overruled.

## PROBABLE CAUSE INQUIRY

 The Texas Rules of Appellate Procedure require that, after each point of error, reference be made to the page of the record where the matter complained of is to be found.[6] We are not expected to examine the record page by page in order to define the existence of the matter complained of in the statement of facts. By failing to comply with rule 74(d), Reed has waived any error.[7] Reed's second point of error is overruled.

## CONFESSION

In his third point of error, Reed complains that the trial court erred in denying the motion to suppress his confession because (1) he did not knowingly and voluntarily waive his rights, (2) he was not given his warnings as required by the Family Code, (3) the interrogation was intimidating, and (4) the confession was induced by "implied promises." As the State points out, the third point of error is multifarious. However, in the interest of justice, we will consider it.[8]

 At the hearing on Reed's motion to suppress, Detective Desmarais testified he transported Reed from the juvenile facility directly to the chambers of Municipal Judge Jerry Moore. He requested that Judge Moore read Reed his rights. Judge Moore and Reed went into chambers while Desmarais waited in the hallway. Approximately five minutes later, Judge Moore returned with Reed and handed Desmarais paperwork

1. Tex.R.App. P. 52(a); *see also* Tex.R.Crim. Evid. 103(a)(1).

2. *DeBlanc v. State*, 799 S.W.2d 701, 718 (Tex. Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991).

3. *Johnson v. State*, 803 S.W.2d 272, 291 (Tex. Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991).

4. Tex.R.App. P. 52(a); *Butler v. State*, 872 S.W.2d 227, 237 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995); *see Fierro v. State*, 706 S.W.2d 310, 317–18 (Tex.Crim.App.1986) (a general objection is not sufficient to apprise trial court of complaint urged and thus preserves nothing for review).

5. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim. App.1990).

6. Tex. R. App. P. 74(d) ("In parentheses after each point, reference shall be made to the page of the record where the matter complained of is to be found.").

7. *Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim.App.1995); *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993); *Routledge v. State*, 834 S.W.2d 452, 456 (Tex.App.—Fort Worth 1992, pet. ref'd).

8. Tex. R. App. P. 74(p) ("The purpose of briefs being to acquaint the court with the points relied upon, the manner in which they arose, together with such argument of facts and law as will enable the court to decide the same, *a substantial compliance with these rules will suffice in the interest of justice; but for a flagrant violation of this rule the court may require the case to be rebriefed.*") [Emphasis added.]

with Judge Moore's signature and that of Reed. The papers indicated that Judge Moore had explained Reed's rights to him.

Desmarais then escorted Reed to the Fort Worth Police Department Youth Division where Reed gave a written but unsigned statement. Desmarais then returned Reed to Municipal Court, but because Judge Moore had left for the day, Desmarais took Reed to the chambers of Municipal Judge Yolanda Bernal. Judge Bernal testified that she read Reed his rights and that Reed understood them. She also read Reed's statement aloud to him and, at Reed's request, made changes in the statement. She was convinced Reed understood the nature and contents of his statement and that he knowingly, intelligently, and voluntarily waived his rights before and during making the statement.

The statement sets forth the required acknowledgement of the warnings and the specific warnings that were given in compliance with section 51.09 of the Family Code. Beneath the warnings, Reed acknowledged that "Having been informed of these, my rights and understanding same, I hereby freely, voluntary [sic] and knowingly waive these rights and not desiring a lawyer voluntarily choose to make the following statement." At the conclusion of the confession, Judge Bernal certified that she had informed Reed of his rights before his giving the statement, that Reed had signed the statement in her presence but outside the presence of any law enforcement official, that she was fully convinced that he understood the nature and contents of the statement, and that he knowingly, intelligently, and voluntarily waived his rights before making the statement and signing it.

At the hearing, Reed testified that he was confused and did not remember whether Judge Moore had warned him. Reed represents to this court that no written warnings were admitted into evidence that showed Reed received his warnings before being questioned. The record contradicts Reed's representations.

State's Exhibit 14, admitted into evidence during the hearing on the motion to suppress, is the document styled "Warning to Juvenile Offender." It is signed by Reed and dated February 23, 1994, at 2:55 p.m. It is also signed by Judge Moore. State's Exhibit 15, which was also admitted into evidence at the suppression hearing, is the "Juvenile Waiver of Rights and Voluntary Statement." State's Exhibit 15 begins with the assertion that before making any statement, Reed had been warned by Judge Moore of the specific rights set out in the document. Below the warnings and waivers, is the typed notation: "Starting time: 1554 hrs." Following the notation, and on the same page as the warnings, Reed begins his confession. The confession is completed two pages later and constitutes three pages. The ending time is noted as "1647 hours," and the statement is signed by Reed and a witness. Beneath the signatures is another statement signed at 5:25 p.m. in the judge's chambers certifying that the magistrate complied with applicable law.

Reed testified generally that his statement was not intelligently, knowingly, and voluntarily made. On appeal, he characterizes himself as "young and confused."

■■■ When hearing a motion to suppress evidence, the judge is the sole and exclusive trier of facts.[9] The trier of fact is the sole judge of the credibility of witnesses and weight to be given their testimony.[10] It is not the job of the appellate court to engage in our own factual review, but we must determine whether the trial court's finding is supported by the record.[11]

■■■ The reviewing court must review the entire record to determine whether there are *any* facts that lend support for any theory upon which the trial court's ruling can be sustained. If the actual findings are sup-

---

9. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990).

10. *Gibbs v. State,* 819 S.W.2d 821, 830 (Tex. Crim.App.1991), *cert. denied,* 502 U.S. 1107, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992).

11. *Romero,* 800 S.W.2d at 543.

ported by the record, the appellate court addresses only the question of whether the trial court improperly applied the law to the facts.[12] If the trial judge's decision is correct on any theory of law applicable to the case, it must be sustained.[13]

We set out as instructive the findings of fact and conclusions of law:

That Detective Desmarais obtained an arrest warrant for Jamal Reed on February 22, 1994; that [the] warrant was executed on February 23, 1994; that the Defendant was arrested by Officer Serra on February 23, 1995 (sic) at approximately 8:35 a.m. And the Court will find that the officer informed Mr. Reed of his constitutional and statutory rights as a juvenile suspect.

The Court will find that the Defendant was transported to the Juvenile Detention Center. Thereafter, Detective Desmarais took the Defendant and transported him to the Ft. Worth Municipal Court at 1000 Throckmorton Street for the purpose of Judge Jerry Moore warning the Defendant of his constitutional and statutory rights at about 2:50 or 2:55 p.m. that afternoon.

Thereafter, the Defendant was taken to the Ft. Worth Police Department Youth Division, which is a facility approved for juvenile holding—an approved facility for the holding of juveniles and that he was interviewed at the time by Detective Desmarais.

That after giving a tape-recorded statement that the Defendant agreed to give a written statement; that that written statement was reduced to writing between the hours of 3:54 p.m. to 4:47 p.m. on February 23, 1994; that, thereafter, the Defendant was transported back to the Municipal Court of Ft. Worth and taken before Judge Yolanda Ayala Bernal for the purpose of that Magistrate again warning the Defendant of his constitutional and statutory rights as a juvenile.

The Court will find that Mr. Reed again was informed of his constitutional and statutory rights; that the statutory and constitutional rights are contained within State's Exhibit 15 on the face of the document.

And the Court will find that he was properly warned by Judge Ayala Bernal at that time and freely, knowingly, intelligently and voluntarily waived his rights and gave the statement contained in State's Exhibit No. 15.

The Court will find that there were no peace officers or attorneys representing the State at the time that he gave his statement contained in State's exhibit No. 15; that is, at the time that he gave the statement to the Magistrate as provided by law.

The Court will find that at no time did any law enforcement officer coerce Mr. Reed into giving a statement; he was not made any promises or promised any rewards or lenient treatment; that the Defendant at no time asked for an attorney or to speak to his mother prior to giving his statement contained in State's Exhibit 15, and, accordingly, that he did freely, knowingly, intelligently and voluntarily waive his rights to give the statement.

The Court will find that the statement was given and signed in front of Judge Bernal at 5:25 p.m. on February 23, 1994, and again is admissible as a matter of law and fact in this case. And in accordance with that, the Court will deny the Motion to Suppress that's been filed in this case and permit the testimony in front of the jury.

In the case before us, the trial judge made careful, precise, and very complete findings of fact and conclusions of law. Such clear findings of fact and conclusions of law make it easier for the reviewing court to determine the exact basis upon which the trial judge based his decision. We commend the careful and conscientious trial judge for the care with which he performed this task. The record amply supports the findings of fact and conclusions of law of Judge Everett Young. Reed's third point of error is without merit and is overruled.

The judgment of the trial court is affirmed.

---

**12.** *Id.*

**13.** *Id.*