**Randall Ricardo ESPINOZA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–96–275–CR.**

Court of Appeals of Texas, Waco.

Oct. 1, 1997.

Rehearing Overruled Nov. 5, 1997.

**110**

Richard W.B. "Rick" Davis, Bryan, for appellant.

Bill Turner, District Attorney, Glynis McDaniel, Assistant District Attorney, Bryan, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

**OPINION**

CUMMINGS, Justice.

The appellant, Randall Espinoza, was convicted by a jury of burglary of a habitation. *See* TEX. PEN.CODE. ANN. § 30.02(a)(3) (Vernon 1994). The trial judge sentenced Espi-

noza to fifteen years' confinement in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PEN.CODE. ANN. § 12.32(a) (Vernon 1994), § 30.02(d)(1) (Vernon Supp.1997). In four points of error, Espinoza claims: (1) there is legally-insufficient evidence Espinoza had the intent to commit criminal mischief when he entered the victim's home; (2) there is factually-insufficient evidence Espinoza had the intent to commit criminal mischief when he entered the victim's home, and factually-insufficient evidence supports the jury's finding regarding the amount of pecuniary loss to the victim; (3) the jury charge contained fundamental error; and (4) the victim's identification of Espinoza was tainted by an impermissibly suggestive identification procedure.

**I. Factual Background**

About 2:30 a.m. on October 8, 1995, John Wiley could not sleep because loud music was being played at a party in the home across the street from his house. Wiley told Riley Rector, a young man who was living in his house, to go over to the party and ask that the music be turned down. When Rector did not return, Wiley decided to go across the street himself to ask that the music's volume be turned down. As Wiley was going over to the party, he was stopped in the middle of the street by Randall Espinoza, and Wiley asked Espinoza to turn the music down. Espinoza refused, telling Wiley that it was a Latin King neighborhood and he would not turn the music down. Espinoza then pushed Wiley and another man hit Wiley in the back of the head. As Wiley began to return home after repeating his demand that the music be turned down, Wiley testified that ten or twelve other young men appeared. The men, including Espinoza, began fighting with Wiley as he retreated into his home and locked the front door.

However, Espinoza and the other men were not willing to leave after Wiley went inside his home. The group started beating on the door with their fists, a knife, and then with a landscaping timber. The group also broke out the two front windows. As the front door came off its hinges and the young men entered the house, Wiley refused to

leave his home. Wiley testified that Espinoza was one of the first people who came through the door. After the group entered, the men began destroying numerous furnishings in the home as well as continuing to fight with Wiley. When the police arrived Wiley identified Espinoza as a member of the group who had broken into his house and destroyed his property.

## II. Points of Error

In his first point of error and as the second sub-point in his second point of error, Espinoza claims that he should not have been convicted of the offense of burglary because legally and factually insufficient evidence exists to show that Espinoza had the intent to commit criminal mischief when he entered Wiley's home. Espinoza contends that the reason the men broke into Wiley's home was to continue fighting with Wiley, and there was no intent to commit criminal mischief when entry was made into the house.

■ Section 30.02 of the Penal Code lists three "distinct ways" a burglary may be committed.[1] *DeVaughn v. State,* 749 S.W.2d 62, 64 (Tex.Crim.App.1988); *see* TEX. PEN.CODE ANN. § 30.02(a) (Vernon 1994 & Supp.1997). If a defendant is charged with burglary under subsections (a)(1) or (a)(2), the State is required to prove the defendant's intent to commit a felony or theft at the time the defendant entered or remained concealed in a habitation or building. *See DeVaughn,* 749 S.W.2d at 64–65; *see also* TEX. PEN.CODE ANN. § 30.02(a). However, when a defendant is charged under subsection (a)(3), the State is not required to prove that the defendant intended to commit the felony or theft at the time of entry. The State must simply prove that the defendant intentionally or knowingly entered the building or habitation without the owner's consent and while inside committed or attempted to commit a felony or theft. *DeVaughn,* 749 S.W.2d at 65; *see also Rivera v. State,* 808 S.W.2d 80, 92 (Tex.

Crim.App.1991); *Flores v. State,* 902 S.W.2d 618, 620 (Tex.App.—Austin 1995, pet. ref'd) ("Prosecution under section 30.02(a)(3) is appropriate when the accused enters without effective consent and, lacking intent to commit any crime upon his entry, subsequently forms that intent and commits or attempts to commit a felony or theft.") (citing SETH S. SEARCY III & JAMES R. PATTERSON, PRACTICE COMMENTARY, TEX. PENAL CODE ANN. § 30.02 (West 1989)).

Espinoza was charged by indictment under section 30.02(a)(3). At trial the State proceeded on paragraph two of count one in the indictment which alleged that Espinoza:

> intentionally and knowingly, without the effective consent of JOHN WILEY, the owner thereof, enter a habitation and did attempt to commit and commit criminal mischief ... and did thereby cause pecuniary loss of $1500 or more but less than $20,000 to the said owner.

Thus, because Espinoza was charged under subsection (a)(3) of 30.02 the State was not required to prove Espinoza's intent to commit criminal mischief when he entered the home of John Wiley. We need not determine then whether there is legally or factually sufficient evidence of Espinoza's intent to commit criminal mischief when he entered Wiley's home because this is not an essential element of the crime of burglary under subsection (a)(3). *See Rivera,* 808 S.W.2d at 92–93. Consequently, we overrule Espinoza's first point and the second sub-point of his second point.

■ In the first sub-point of Espinoza's second point of error, he asserts that the evidence is factually insufficient to show that the value of the property damaged in Wiley's home was at least $1,500. As discussed above, when a defendant is charged with the offense of burglary under section 30.02(a)(3), the State must prove the defendant attempted or committed a felony or theft after enter-

---

1. The text of § 30.02(a) of the Penal Code reads:
(a) A person commits an offense if, without the effective consent of the owner, he:
(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; or

(2) remains concealed, with intent to commit a felony or theft, in a building or habitation; or
(3) enters a building or habitation and commits or attempts to commit a felony or theft.

ing the building or habitation. Tex. Pen. Code Ann. § 30.02(a)(3). In the instant case the State sought to prove that Espinoza attempted or committed the crime of criminal mischief after breaking into Wiley's home. *See* Tex. Pen Code Ann. § 28.03 (Vernon 1994 & Supp.1997). Section 28.03(b)(4) of the Penal Code determines that criminal mischief is a state jail felony if the amount of loss caused by the defendant's intentional or knowing destruction of property is $1,500 or more but less than $20,000. Tex. Pen Code Ann. § 28.03(b)(4) (Vernon 1994).

In reviewing a claim that the evidence is factually insufficient to support a finding of guilt, the appellate court will examine all the evidence in the record, not just the evidence supporting the verdict, and will reverse a conviction if the verdict is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996) (quoting *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996)). While conducting this review we do not sit as a "thirteenth juror" to re-weigh the evidence, but instead we give "due deference" to the jury's determination of questions on the weight and credibility of evidence. *Desselles v. State,* 934 S.W.2d 874, 878 (Tex.App.—Waco 1996, no pet.); *see also Santellan v. State,* 939 S.W.2d 155, 164 (Tex. Crim.App.1997).

Section 28.06 of the Penal Code prescribes the appropriate method to measure the amount of pecuniary loss resulting from an act of criminal mischief. Tex. Pen.Code Ann. § 28.06 (Vernon 1994). If property is merely damaged, not destroyed, then the amount of pecuniary loss is "the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred." Tex. Pen.Code Ann. § 28.06(b) (Vernon 1994); *see Deas v. State,* 752 S.W.2d 573, 575 (Tex.Crim.App.1988); *Kinkade v. State,* 787 S.W.2d 507, 509 (Tex.App.—Houston [1st Dist.] 1990, no pet.). If the property is destroyed and the fair market value of the property is ascertainable, then the measure of pecuniary damage is "the fair market value of the property at the time and place of the destruction." Tex. Pen.Code Ann. § 28.06(a)(1), (2) (Vernon 1994); *see Kin-*

*kade,* 787 S.W.2d at 509. Under 28.06 there is no requirement that repairs to the damaged property actually be made, only the fair market value of the cost of repairs is necessary to formulate the amount of pecuniary loss. *See Elomary v. State,* 796 S.W.2d 191, 193 (Tex.Crim.App.1990). Also, appellate courts have previously held that testimony by an owner about the cost to replace destroyed property is sufficient to establish the pecuniary value of the property. *Rivera v. State,* 885 S.W.2d 581, 584 (Tex.App.—El Paso 1994, no pet.); *Sepulveda v. State,* 751 S.W.2d 667, 669 (Tex.App.—Corpus Christi 1988, pet. ref'd); *Collins v. State,* 740 S.W.2d 534, 536 (Tex.App.—Beaumont 1987, no pet.); *but see Nixon v. State,* 937 S.W.2d 610, 612 (Tex.App.—Houston [1st Dist.] 1996, no pet.) (owner's testimony about an estimate to repair damage to her home was hearsay).

The State presented evidence specifying the amount of loss for both the real and personal property damaged or destroyed by the criminal mischief. Wiley testified regarding the value of his personal property. Items which were destroyed include: a lamp worth $20, a small television worth $50, and a kitchen table worth $200. Items which were damaged include: a large television originally costing $479 and a coffee table originally costing $40 to $50. The State had a television repairman testify that the cost to repair the large television would be at least $225, but there was no testimony regarding the cost to repair the damaged coffee table. Thus, the amount of loss caused by the damage or destruction of Wiley's personal property is at least $495 if the large television was merely repaired and the cost to repair the coffee table is not included.

Next the State had David Huff, a building contractor, testify about the cost to repair the damage to the home itself. Huff's testimony can be summarized as follows: repair of the door $280, repair of the left window $290, repair of the right window $59, two new screens $70, repair of the damage to the sheetrock inside the home $400, new curtain $90, new mini-blind $75, new back door screen $60, and repair of the fence and gate $205. After adding these amounts, the total amount of loss caused by the damage to the

home is at least $1529, assuming the front door was only repaired, not replaced.

Espinoza first claims that there is insufficient evidence to show that the fence or the mini-blind was damaged on October 8 by the criminal mischief. However, Wiley testified about the damage to the gate and said: "The gate was practically ripped off. Boards were kicked out to the side of it." Regarding the home's window treatments he stated: "The curtains were all tor[n] down and are still pretty much that way. The blinds in my bedroom are all broke[n]. [They are] still broke[n]."

Espinoza's principal complaint about the amount of loss is that the testimony of the State's expert witness, David Huff, a home building contractor, sets the fair market value of the necessary repairs higher than the property owner's testimony about how much he believed it would actually cost him to repair the home. Michael Szabuniewicz, the owner of the home which Wiley rented, testified he had already spent $200 on repairs and he gave an estimate on what it would cost to fix the rest of the damage. The estimate of his cost to repair the home was: $105 for the gate, $180 for the door, $90 for curtains and blinds, $100 for the window, and $165 for damage to the sheetrock. Thus, Szabuniewicz's testimony puts the amount of loss at $840. But during his testimony Szabuniewicz also stated that he had done his estimate quickly and it probably only included material costs, but not labor costs. Szabuniewicz said his sheetrock estimate was only for the emergency repairs needed, but he probably would have to repair a larger area. Also, he testified that repainting the walls after the repairs were completed was not included in the estimate, and this would increase the cost of repair.

Consequently, we decide that the jury's verdict finding the amount of loss to be $1,500 or more was not so against the evidence as to be clearly wrong and unjust. The State's expert, David Huff, is a contractor doing home repair work, and as part of his job he testified that he often gave estimates about the cost to do a repair job. Huff explained that to prepare his estimate he examined the home, called for material prices, and estimated labor charges. Thus, the jury's reliance on Huff's estimate, not Szabuniewicz's estimate, to find that the amount of pecuniary loss was $1,500 or more is not against the great weight of the evidence, as Szabuniewicz's estimate was not definite regarding the total cost to repair all the damage to the home. *See Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App. 1996). Espinoza's first sub-point of his second point is overruled.

■ In his third point of error Espinoza asserts that the court's charge to the jury was fundamentally erroneous because it authorized the jury to convict if the jurors believed Espinoza simply attempted to commit criminal mischief causing damage of $1,500 or more. Espinoza argues that the attempt to commit criminal mischief ($1,500 or more but less than $20,000) is not a felony, but a class A misdemeanor, and this offense cannot be used to convict him of burglary under section 30.02(a)(3) of the Penal Code. *See* TEX. PEN.CODE ANN. § 15.01(d) (Vernon 1994), § 30.02(a)(3). Espinoza also argues that the charge was fundamentally flawed because the indictment alleges he "did attempt to commit *and* commit criminal mischief" while the charge allows the jury to convict based on an "attempt to commit *or* commit[ting] criminal mischief." (emphasis added).

After reviewing Espinoza's jury charge, we conclude that it does not contain fundamental error. In determining whether a defendant may be convicted of burglary when the completed offense the defendant attempted to commit is classified as a felony, but the attempt to commit the felony is itself classified as a misdemeanor by the Penal Code, we begin our analysis by looking for the plain, unambiguous meaning of the phrase "attempts to commit a felony" contained in the burglary statute. TEX. PEN.CODE ANN. § 30.02(a)(3); *see Brown v. State*, 943 S.W.2d 35, 36 (Tex.Crim.App.1997). When the language of a statute is clear and unambiguous, courts are bound to follow the plain meaning of the text "unless doing so would lead to absurd results." *Brown*, 943 S.W.2d at 36; *see also Ramos v. State*, 934 S.W.2d 358, 364 (Tex.Crim.App.1996); *Boykin v. State*, 818

S.W.2d 782, 785 (Tex.Crim.App.1991). The text of the burglary statute unambiguously states that an attempt to commit a felony is sufficient for the jury to convict a defendant of burglary. TEX. PEN.CODE ANN. § 30.02(a)(3). The statute does not require that the defendant have actually committed a felony, only that he attempted to commit one. *Id.* The fact that section 15.01(d) of the Penal Code classifies an attempt to commit a state jail felony as a class A misdemeanor does not change the plain meaning of the burglary statute which allows a conviction for burglary based on the defendant's attempt to commit a felony. *See* TEX. PEN.CODE ANN. § 15.01(d).

■■■ Moreover, Espinoza contends the jury charge is fundamentally flawed because it allowed the jury to convict if the jury found Espinoza "attempted or committed" criminal mischief when the indictment alleged that Espinoza had "attempted and committed" this crime. An indictment may plead alternative methods of committing an offense conjunctively, but the charge may properly instruct the jury in the disjunctive to allow a conviction "if the evidence is sufficient to support a finding under any of the theories submitted." *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991); *see Manning v. State*, 864 S.W.2d 198, 202 (Tex.App.— Waco 1993, pet. ref'd). For example, in *McDuff v. State*, the indictment alleged that the defendant had committed "capital murder via murder in the course of committing *and* attempting to commit aggravated sexual assault *and* aggravated kidnaping." 939 S.W.2d 607, 614 (Tex.Crim.App.1997) (emphasis added). But in *McDuff*, as in the instant case, while the indictment charged the two methods of committing capital murder conjunctively, the jury charge was phrased in the disjunctive to allow a conviction if the murder occurred "in the course of committing *or* attempting to commit aggravated sexual assault *or* aggravated kidnap-

ing." *Id.* at 614 & n. 2 (emphasis added). Consequently, we find no fundamental error in Espinoza's jury charge because the State may conjunctively plead two methods of committing the offense of burglary in the indictment, *i.e.* by attempting and committing criminal mischief, but have the jury instructed on these two methods in the disjunctive. *See* TEX. PEN.CODE ANN. § 30.02(a)(3). Espinoza's third point is overruled.

In his fourth point of error Espinoza claims that Wiley's identification of him was tainted by an impermissibly suggestive identification procedure. On October 8, one of the police officers responding to the emergency call found marijuana in Espinoza's pocket during a pat-down for weapons. After the drugs were found, Espinoza was arrested, placed in handcuffs, and put in the back of a police car. Later other officers had Wiley come out of his home to identify the persons involved in the break-in at his house, and Wiley identified Espinoza, Galvan, and Prado as being participants.[2] During this identification Espinoza was sitting in the police car, but Galvan and Prado were not in police vehicles because they had not been arrested. As the police officers· continued to investigate the incident, Prado was determined by police not to have participated in the break-in at Wiley's home, and Wiley testified that he apologized to Prado for the mis-identification.

■■■ On appeal the State contends that any error in Wiley's in-court identification of Espinoza was waived. At trial there was no objection to Wiley's in-court identification of Espinoza, nor was there any written pre-trial motion to suppress Wiley's in-court identification.[3] However, after Wiley testified and identified Espinoza, Officer Ratekin testified about the identification procedure used at the time of the incident. Following the officer's testimony, Espinoza's lawyer moved for a mistrial claiming that Espinoza's due process

---

2. Eddie Galvan was a co-defendant of Espinoza who was also convicted at trial. Rick Prado was found not to have been involved in the break-in.

3. During the final pre-trial hearing held the Friday before the trial began on Monday, one of the defense attorneys made an oral request for a hearing regarding Wiley's identification of the

defendants, which the trial court denied. The trial judge apparently denied this request because it was not timely raised in a pre-trial motion. *See* TEX.CODE CRIM. PROC. ANN. art. 28.01 § 2 (Vernon 1989); *Saenz v. State*, 840 S.W.2d 96, 99 (Tex.App.—El Paso 1992, pet. ref'd.).

rights were violated by the suggestive identification procedure.[4] Espinoza's attorney stated that she had been led to believe by the State that Wiley identified Espinoza while Espinoza was standing in the front yard with the other men, but said that she was never told Espinoza had already been arrested and put in a police vehicle.

 In order to preserve error for appeal, an attorney must make a timely, specific objection as soon as the ground for objection becomes apparent. *Lagrone v. State,* 942 S.W.2d 602, 618 (Tex.Crim.App.1997); *Penry v. State,* 903 S.W.2d 715, 763 (Tex. Crim.App.1995); *Reed v. State,* 927 S.W.2d 289, 291 (Tex.App.—Fort Worth 1996, no pet.); *Moreno v. State,* 821 S.W.2d 344, 353 (Tex.App.—Waco 1991, pet. ref'd). If an objection is not made until after objectionable testimony has been given, then error is waived unless a "legitimate reason to justify the delay" is shown. *Lagrone,* 942 S.W.2d at 618; *see Crane v. State,* 786 S.W.2d 338, 348 (Tex.Crim.App.1990) (holding that the defendant's objection to a witness' in-court identification was timely following the witness' testimony because the defendant's lawyer cross-examined the witness on a pre-trial photo line-up which had not been disclosed to defense counsel).

 Even assuming that error has not been waived by the failure to object to Wiley's in-court identification of Espinoza, we conclude that the trial court did not abuse its discretion in overruling Espinoza's motion for a mistrial because Wiley's identification of Espinoza need not be suppressed. In determining if the suggestiveness of an out-of-court identification prohibits a later in-court identification, the court must look at "1) whether the out-of-court identification procedure was impermissibly suggestive; and 2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification." *Barley v. State,* 906 S.W.2d 27, 33 (Tex.Crim.App.1995) (footnote omitted); *Smith v. State,* 930 S.W.2d 227, 228 (Tex.App.—Beaumont 1996, pet. ref'd) (quoting *Barley* ). Factors to consider in deciding whether there is a "very substantial likelihood" a reliable in-court identification cannot be made by the witness include:

(1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the pre-trial confrontation; and (5) the time between the crime and the confrontation.

*Woodard v. State,* 931 S.W.2d 747, 750 (Tex. App.—Waco 1996, no pet.); *see Barley v. State,* 906 S.W.2d at 34; *Smith,* 930 S.W.2d at 228–29.

From Wiley's testimony in court, it is apparent that Wiley had a clear, unobstructed view of Espinoza and that Wiley's attention was focused on Espinoza throughout the incident, as Espinoza was one of the main participants in the group who instigated the fight and break-in. Espinoza was the first person Wiley spoke to in asking that the loud music be turned down. In response to this request Espinoza refused, saying that the music would not be turned down for anyone, and Espinoza pushed Wiley, thereby starting the fighting. After the fighting began, Wiley stated that Espinoza was one of the first men who entered his home after his front door was broken down, and once inside Espinoza continued fighting with Wiley. Additionally, Wiley's identification of Espinoza occurred only fifteen or twenty minutes after the break-in and Wiley testified that the identification was not the result of a suggestion by police officers.

Espinoza's brief argues that because Wiley mis-identified Prado as being a participant, all of Wiley's identifications should be considered unreliable. Wiley testified at trial that there were a total of ten to twelve men in his home that evening and that he "couldn't have recognized all of them." Thus, Wiley explained that when he saw Prado with two men he did recognize, Espinoza and Galvan, he assumed Prado had been in his home as

---

4. Espinoza argues that the trial court should have held a hearing after his objection to the identification was made, but we note that no hearing was requested by defense counsel and absent a proper request the trial court has no duty to conduct a hearing. *Crane v. State,* 786 S.W.2d 338, 348 (Tex.Crim.App.1990).

well. Wiley's testimony reflects that he was certain of his identification of Espinoza, despite his mis-identification of another individual.

After reviewing the evidence in the record, we hold that the trial court did not abuse its discretion in overruling Espinoza's motion for a mistrial. While it is true that on-the-scene identification of suspects is somewhat suggestive, this procedure is often beneficial to police as it allows the victim to identify a suspect immediately after a crime has been committed. *Garza v. State,* 633 S.W.2d 508, 512 (Tex.Crim.App.1981); *Powell v. State,* 837 S.W.2d 809, 811 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Wiley's testimony demonstrates that he had an excellent opportunity to view Espinoza, who was one of the main participants in the break-in, and consequently Wiley's in-court identification of Espinoza was not rendered unreliable by suggestive police procedures. Espinoza's fourth point is overruled.

The judgment is affirmed.

VANCE, J., concurring.

VANCE, Justice, concurring.

I write again to urge the Court of Criminal Appeals to reexamine the standard of review adopted in *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). *See Mata v. State,* 939 S.W.2d 719, 728 (Tex.App.—Waco 1997, no pet.) (Vance, J., concurring).

A different approach would be taken in the analysis of the factual sufficiency of the evidence to support the jury's determination that the value of the property damaged in Wiley's home was at least $1,500 if we were asking whether the finding is clearly wrong and unjust given the reasonable doubt standard, rather than the question required by *Clewis:* does the weight of the evidence actually favor acquittal? *See id.* at 729. The evidence of the cost of repairs given through the testimony of Szabuniewicz, the owner of the house, might be weighed differently under the analysis I suggested in *Mata* than under the analysis required by *Clewis.*

With this observation, I join the court's opinion.