

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00099-CR
_____

SCOTT RONALD DARNELL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Franklin County, Texas
Trial Court No. F9549

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Chief Justice Morriss

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

# MEMORANDUM OPINION

Scott Ronald Darnell was convicted of criminal mischief, sentenced to nine months' confinement in state jail, and ordered to pay $2,981.09 in restitution. *See* TEX. PENAL CODE ANN. § 28.03 (Supp.). On appeal, Darnell argues that there was insufficient evidence to prove three different items: that he was the perpetrator of the offense, that the amount of pecuniary loss was $2,500.00 or more, but less than $30,000.00, and that the amount of restitution was $2,981.09.

Because (1) legally sufficient evidence supported the trial court's finding of guilt and the pecuniary-loss bracket and (2) Darnell forfeited his complaint about the trial court's restitution order, we affirm the trial court's judgment.

*(1)*     *Legally Sufficient Evidence Supported the Trial Court's Finding of Guilt and the Pecuniary-Loss Bracket*

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214

S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13).

Here, the State alleged that Darnell "intentionally and knowingly damage[d] or destroy[ed] tangible property, to-wit: a catalytic converter, by cutting, without the effective consent of Robert Puryear, the owner of said property, and did thereby cause pecuniary loss of $2500 or more but less than $20,000 to said owner."[1]

At trial, Officer Robble Acosta testified that he responded to a noise complaint in the middle of the night at Mount Vernon First Baptist Church. According to Acosta, the caller reported the use of power tools at midnight. When Acosta arrived at the church, he saw a black pickup truck parked a significant distance behind the church next to the church buses. He addressed John Spillman, an individual in his seventies, who owned and was seated in the

---

[1] Criminal mischief is "a state jail felony if the amount of pecuniary loss is . . . $2,500 or more but less than $30,000." TEX. PENAL CODE ANN. § 28.03(b)(4)(A).

driver's seat of the truck. Fifty-one-year-old Darnell, who Spillman raised and described as his son, was in the passenger seat.

Acosta found a Sawzall right beside one of the church buses and testified that the tool was warm to the touch. In the truck's toolbox, Acosta located a catalytic converter that had been removed from a twenty-five-passenger church bus nearby. Acosta testified that no fingerprints were collected from the scene or any other eyewitnesses located but that blades and batteries that matched the Sawzall were found in the truck. He also testified that "the paint marks on the catalytic converter matched the paint on the saw blade of the Sawzall found on the ground." Teo Marquez, a deputy with the Franklin County Sheriff's Office, said that he arrived on the scene to assist Acosta. Marquez testified that officers removed the catalytic converter from the toolbox, that they placed it beneath the bus, and that "[t]he exact width where it was cut, it was real consistent."

Although Spillman and Darnell both claimed that they had pulled over in the church parking lot to sleep during a drive from Fort Worth to Texarkana and denied knowledge of or involvement in the removal of the catalytic converter from the church bus, Acosta testified that there was no one else in the church parking lot.

Puryear, the church's pastor, testified that he did not give anyone permission to remove the catalytic converter from the church bus. Gerald Holter, the church's property manager, testified that the church paid $2,981.09 to Gandy's Automotive for installation of a new catalytic converter on the bus. The invoice showed that the parts for the repair were $2,451.90, that the labor cost was $280.00, and that $249.00 was charged for freight costs.

4

Holter testified that the church did not receive any other estimates for the repair and that the church was "reimbursed down the road from insurance" but did not "have the breakdown of what the deductible was." During cross-examination, Puryear testified that the bus was insured but that he did not know if the church had filed an insurance claim or had been paid for any damage to the bus. After hearing this evidence, the trial court found Darnell guilty of criminal mischief causing pecuniary loss of $2,500.00 or more but less than $30,000.00.

On appeal, Darnell argues that the evidence was legally insufficient to support the trial court's finding that Darnell was the perpetrator because the evidence showed that he was asleep when officers arrived, and no direct evidence linked him to the crime. We disagree because the cumulative force of all the incriminating circumstances was sufficient to support Darnell's conviction.

The evidence at trial showed that Acosta arrived shortly after the noise complaint and found only Spillman and Darnell in the truck, which had the converter in its toolbox. The truck was next to the church buses, including the one from which the catalytic converter had been removed. Acosta testified that the Sawzall was still warm to the touch, indicating that it had been used recently. Although Darnell claimed to be asleep and Acosta testified that he found Darnell asleep when he arrived, the trial court was free to find that Darnell was merely feigning sleep due to the recent complaint of noise that was loud enough for the caller to have identified it as emanating from a power tool.

Also, Spillman, the only other person at the scene before law enforcement arrived, appeared frail on video, was unable to stand unassisted, and had passed away by the time of trial,

5

but the evidence showed that the Sawzall was a relatively large tool and that the converter had been removed from beneath the bus. As a result, the trial court could have concluded that Darnell, but not Spillman, possessed the strength and dexterity to wield the tool to remove the catalytic converter from underneath the bus. Thus, the reasonable conclusion was that Spillman was unlikely to have performed such a task alone and that Darnell was the far more likely actor. Viewing the evidence in the light most favorable to the trial court's finding, we conclude that a rational fact-finder could have found beyond a reasonable doubt that Darnell committed the offense.

In another point of error, Darnell argues that insufficient evidence supported the trial court's finding on the amount of pecuniary loss. The amount of pecuniary loss to the owner "is a crucial element of the offense because it forms the basis of the punishment assessed." *Lackey v. State*, 290 S.W.3d 912, 918 (Tex. App.—Texarkana 2009, pet. ref'd) (citing *Elomary v. State*, 796 S.W.2d 191, 192–93 (Tex. Crim. App. 1990); *Jones v. State*, 377 S.W.2d 205, 206 (Tex. Crim. App. 1964)). It is "determined depending mainly on whether the criminal mischief damaged or destroyed the property." *Id.*

"If the property is destroyed, the pecuniary loss is the fair market value of the property when and where it was destroyed."[2] *Id.* (citing TEX. PENAL CODE ANN. § 28.06(a)(1)). "On the

---

[2]*In Garcia v. State*, an unpublished opinion, we wrote that "[a]n owner may testify regarding the purchase price or replacement cost and is presumed to be testifying regarding an assessment of the fair-market value." *Garcia v. State*, No. 06-19-00010-CR, 2019 WL 3720634, at *4 (Tex. App.—Texarkana Aug. 8, 2019, no pet.) (mem. op., not designated for publication) (citing *Campbell v. S*tate, 426 S.W.3d 780, 783 (Tex. Crim. App. 2014); *Sullivan v. State*, 701 S.W.2d 905, 909 (Tex. Crim. App. 1986)). Although unpublished cases have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

other hand, if the property is destroyed but the fair market value of that property cannot be ascertained, then the pecuniary loss is the cost of replacing that property." *Id.* (citing TEX. PENAL CODE ANN. § 28.06(a)(2)). "Finally, if the property is not destroyed, but is merely damaged, the pecuniary loss is the cost of repairing or restoring the property." *Id.* (citing TEX. PENAL CODE ANN. § 28.06(b)).

Darnell argues that the indictment's failure to mention the bus resulted in a material variance between the indictment and proof at trial. He contends that, because the indictment accused him of damaging or destroying the catalytic converter and not the bus, the State was required to prove either the fair market value of the catalytic converter or the cost of repairing or restoring the catalytic converter only and not the bus. In other words, Darnell asserts that labor costs incurred in affixing the new catalytic converter to the bus cannot be considered. Because the invoice in evidence showed that the cost of a new catalytic converter was $2,451.90, Darnell argues that the State failed to prove the essential element of the amount of pecuniary loss in the amount of $2,500.00 or more. We disagree with Darnell's argument.

In *Bolyard v. State*, the Eastland Court of Appeals rejected a similar argument. In that case, the State alleged that Bolyard entered a habitation without the owner's consent and committed the offense of criminal mischief by damaging or destroying "a 2003 FORD PICKUP TRUCK AND A WATERBED by pouring paint on the 2003 Ford Pickup Truck, cutting the waterbed with an object or objects unknown and . . . thereby caus[ing] pecuniary loss in the amount of fifteen hundred dollars ($1[,]500.00) or more but less than twenty thousand dollars ($20,000.00)." *Bolyard v. State*, 198 S.W.3d 806, 807 (Tex. App.—Eastland 2006, no pet.). At

7

trial, the evidence showed that damages to the pickup and waterbed were less than $1,500.00, but that damage "to the garage resulting from Bolyard's pouring paint on the pickup and damage to the master bedroom caused by his cutting the waterbed resulted in damage totaling more than $1,500." *Id.* at 808. Because the garage and master bedroom were omitted from the language in the indictment, just as the bus is omitted from the indictment here, Bolyard raised a material-variance argument and alleged that the evidence was insufficient to establish the amount of pecuniary loss. *Id.* The Eastland Court of Appeals found that "[t]he indictment does not limit such damage to the pickup and the waterbed themselves, and Bolyard presents no authority that it does." *Id.* at 809. As a result, the Eastland Court of Appeals found no variance between the indictment and proof at trial.

A person commits criminal mischief if he "intentionally or knowingly damages or destroys the tangible property of the owner without effective consent." TEX. PENAL CODE ANN. § 28.03(a). Although "[t]he amount of pecuniary loss to the owner determines the degree of offense," *Campbell v. State*, 426 S.W.3d 780, 784 (Tex. Crim. App. 2014), we agree with the analysis in *Bolyard* that neither the statute in this case nor the indictment here limits the amount of pecuniary loss to damage or destruction of the catalytic converter, as opposed to the bus. This is because, while the State alleged only that Darnell damaged or destroyed the catalytic converter, it was not precluded from showing that the resulting pecuniary loss to the owner included damage to the bus. *See Bolyard*, 198 S.W.3d 808–09. Our finding is consistent with the criminal-mischief statute:

> When more than one item of tangible property . . . is damaged, destroyed, or tampered with[,] in violation of this section pursuant to one scheme or continuing

8

course of conduct, the conduct may be considered as one offense, and the amounts of pecuniary loss to property resulting from the damage to, destruction of, or tampering with the property may be aggregated in determining the grade of the offense.

TEX. PENAL CODE ANN. § 28.03(e). Also,

[a] variance between the wording of an indictment and the evidence presented at trial is fatal only if "it is material and prejudices [the defendant's] substantial rights." When reviewing such a variance, we must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime.

*Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001) (quoting *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000) (citations omitted)). Darnell does not dispute that the State's indictment informed him of the charge against him, nothing in the record showed that Darnell was surprised by inclusion of labor costs involved to affix the catalytic converter to the bus, and there was "no possibility that [any] variance placed [Darnell] in double jeopardy." *See Bolyard*, 198 S.W.3d at 809. As a result, we overrule Darnell's complaint about a material variance.

"[T]estimony by an owner about the cost to replace destroyed property is sufficient to establish the pecuniary value of the property." *Espinoza v. State*, 955 S.W.2d 108, 112 (Tex. App.—Waco 1997, pet. ref'd). Here, the evidence showed that the cost to replace and reinstall the catalytic converter onto the bus was $2,981.09. Moreover, legally sufficient evidence to show more than $2,500.00 in pecuniary losses would still exist even if we were to exclude labor costs. This is because the invoice specified that the cost of freight for the catalytic converter was $249.90. Because the cost of shipping the catalytic converter was fairly included in the owner's

9

cost of replacement or repair, the amount of pecuniary loss, even excluding the labor costs, would exceed $2,500.00 or more.

We find that legally sufficient evidence supported the trial court's finding of guilt and the pecuniary-loss bracket. As a result, we overrule these points of error.

*(2)      Darnell Forfeited His Complaint About the Trial Court's Restitution Order*

Finally, Darnell argues that the trial court's order to pay $2,981.09 in restitution is not supported by the evidence because the record indicated that the church expected or had received reimbursement from the insurance company.[3] Based on a recent decision from the Texas Court of Criminal Appeals, we find the issue unpreserved.

In *Garcia v. State*, the Texas Court of Criminal Appeals decided that "[c]hallenges to restitution orders must be raised in the trial court to preserve them for appellate review," where there is an opportunity to do so, such as when a trial court "order[s] restitution at the sentencing hearing." *Garcia v. State*, No. PD-0025-21, 2022 WL 610983, at *3, 4 (Tex. Crim. App. Mar. 2, 2022). The court wrote:

> [W]e find no controlling or persuasive authority for foregoing a preservation requirement for a challenge to the sufficiency of the evidence to support a restitution order. And imposing a preservation requirement would be consistent with our rules and jurisprudence that favor error correction in the trial court where possible. Consequently, we abandon the factual basis/sufficiency-vs.-propriety distinction in the context of a restitution order and hold that even if Appellant's

---

[3]Darnell cites Article 42.037(f)(1) of the Texas Code of Criminal Procedure, which states, in relevant part:

> The court may not order restitution for a loss for which the victim has received or will receive compensation only from a source other than the compensation to victims of crime fund. The court may, in the interest of justice, order restitution to any person who has compensated the victim for the loss to the extent the person paid compensation.

TEX. CODE CRIM. PROC. ANN. art. 42.037(f)(1) (Supp.).

10

challenge were a factual-basis complaint that qualified as a sufficiency challenge, he would have forfeited it by his failure to object in the trial court.

*Id.* at *1.  The court added,

Preservation requirements ensure that the judicial system is not burdened by costly appeals and time-consuming retrials.  *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006) (citations omitted).  A timely objection allows the trial court an opportunity to prevent or correct errors.  *Id.*  Such a requirement also "guarantees that opposing counsel will have a fair opportunity to respond to complaints[,]" and "promotes the orderly and effective presentation of the case to the trier of fact."  *Id.*  Given these considerations, a restitution complaint should be forfeited by a defendant who foregoes the opportunity to address it in the trial court.

*Id.* at *4 (alteration in original).

Here, in open court during the sentencing hearing, the trial court ordered Darnell to pay $2,981.09, and Darnell raised no objection to the order.  He also did not file a motion for a new trial raising the issue.  Based on *Garcia*, we find that Darnell forfeited this point of error on appeal.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:     March 15, 2022
Date Decided:       April 14, 2022

Do Not Publish