ACCEPTED
03-14-00215-CR
3843968
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/21/2015 12:36:32 PM
JEFFREY D. KYLE
CLERK

**No. 03-14-00214-CR**
**No. 03-14-00215-CR**
**No. 03-14-00216-CR**
**No. 03-14-00217-CR**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

1/21/2015 12:36:32 PM

JEFFREY D. KYLE
Clerk

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN, TEXAS

———————————

JONATHAN MATTHEW PORTERIE,
**Appellant**

**v.**

THE STATE OF TEXAS,
**Appellee**

———————————

*On appeal from the 22nd Judicial District Court*
*of Hays County, Texas*
*In Cause Nos. CR-13-0076, CR-13-0077, CR-13-0078, & CR-13-0920*

———————————

AMENDED APPELLANT'S BRIEF

———————————

**James Gerard McDermott, II**
**Thompson Salinas**
**Rickers & McDermott, LLP**
**8140 N. Mopac**
**Westpark 4, Suite 250**
**Austin TX 78759**
**512.201.4099**
**512.298.1129 (facsimile)**
**james@centraltexaslawyers.com**
*Attorney for Appellant*

***Oral Argument Not Requested***

## LIST OF PARTIES

**APPELLANT**
Jonathan Matthew Porterie

    **APPELLANT'S ATTORNEYS AT TRIAL**

| | |
|---|---|
| Gina M. Jones | Thomas C. Vaughn |
| State Bar No. 24036855 | State Bar No. 24060771 |
| Law Office of Gina Jones | Tommy Vaughn Law Firm |
| 200 N. Seguin Ave. | 200 N. Seguin Ave. |
| New Braunfels TX 78130 | New Braunfels TX 78130 |

    **APPELLANT'S ATTORNEY ON APPEAL**
James Gerard McDermott, II
State Bar No. 24041438
Thompson Salinas Rickers & McDermott, LLP
8140 N. Mopac
Westpark 4, Suite 250
Austin TX 78759

**APPELLEE**
The State of Texas

    **APPELLEE'S ATTORNEYS AT TRIAL**
Brian Clarke Erskine
State Bar No. 24074182
Gerard J. Perches
State Bar No. 24040196
Assistant Hays County District Attorneys
712 South Stagecoach Trail, Suite 2057
San Marcos TX 78666

    **APPELLEE'S ATTORNEYS ON APPEAL**

Brian Clarke Erskine
State Bar No. 24074182
Assistant Hays County District Attorney
712 South Stagecoach Trail, Suite 2057
San Marcos TX 78666

# TABLE OF CONTENTS

| | |
|---|---|
| LIST OF PARTIES | i |
| TABLE OF CONTENTS | ii |
| TABLE OF AUTHORITIES | iii |
| STATEMENT OF THE CASE | 1 |
| ISSUES PRESENTED | 2 |
| STATEMENT OF FACTS | 3 |
| SUMMARY OF ARGUMENT | 3 |
| ARGUMENT | 4 |
| ISSUE I | 5 |
| ISSUE II | 4, 6 |
| ISSUE III | 12 |
| ISSUE IV | 15 |
| ISSUE V | 19, 21 |
| ISSUE VI | 19, 23 |
| PRAYER | 25 |
| CERTIFICATE OF COMPLIANCE | 26 |
| CERTIFICATE OF SERVICE | 26 |

# TABLE OF AUTHORITIES

**CASES**

*Boyle v. State*, No. 69,743, 1991 Tex. Crim. App. LEXIS 102 (Tex. Crim. App. May 15, 1991) (opinion on rehearing) (unpublished) .......... 9-10

*Brown v. State*, 576 S.W.2d 820 (Tex. Crim. App. 1978) .......... 23

*Crenshaw v. State*, 378 S.W.3d 460 (Tex. Crim. App. 2012) .......... 8

*DeVaughn v. State*, 749 S.W.2d 62 (Tex. Crim. App. 1988) .......... 21

*Doyle v. State*, 661 S.W.2d 726 (Tex. Crim. App. 1983) .......... 9

*Espinoza v. State*, 955 S.W.2d 108 (Tex. App.—Waco 1997, pet. ref'd) .......... 21

*Evans v. State*, 677 S.W.2d 814 (Tex. App.—Fort Worth 1984, no pet.) .......... 14

*Ex parte Cavazos*, 203 S.W.3d 333 (Tex. Crim. App. 2006) .......... 21

*Ex parte Thompson*, 442 S.W.3d 325 (Tex. Crim. App. 2014) .......... 6

*Hathorn v. State*, 848 S.W.2d 101 (Tex. Crim. App. 1992) .......... 14

*Jackson v. Virginia*, 443 U.S. 307 (1979) .......... 12

*Karenev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009) .......... 6

*Kirby v. State*, No. 05-93-00214-CR, 1995 Tex. App. LEXIS 3907 (Tex. App.—Dallas Mar. 15, 1995) (not designated for publication) .......... 16

*Lapasnick v. State*, 784 S.W.2d 366 (Tex. Crim. App. 1990) .......... 6

*Leal v. State*, 975 S.W.2d 636 (Tex. Crim. App. 1998) .......... 9

*Lee v. State*, 442 S.W.3d 569 (Tex. App.—San Antonio 2014, no pet.) .......... 14

*Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993) .......... 6

*Neil v. Biggers*, 409 U.S. 188 (1972) .......... 17

*Pierson v. State*, 398 S.W.3d 406 (Tex. App.—Texarkana 2013, aff'd on other grounds) — 8

*Sanchez v. State*, 120 S.W.3d 359 (Tex. Crim. App. 2003) — 6

*Schuster v. State*, 435 S.W.3d 362 (Tex. App.—Houston [1st Dist.] 2014, no pet.) — 6

*Simmons v. United States*, 390 U.S. 377 (1968) — 16, 18

*Thornton v. State*, 425 S.W.3d 289 (Tex. Crim. App. 2014) — 23

*United States v. Wade*, 388 U.S. 218 (1967) — 17

*Wise v. State*, 364 S.W.3d 900 (Tex. Crim. App. 2012) — 12

## CODES AND RULES

TEX. CODE CRIM. PROC. art. 38.07 — 23

TEX. PEN. CODE § 1.07(a)(11) — 21, 23

TEX. PEN. CODE § 21.15 — 1, 5-7, 10

TEX. PEN. CODE § 22.011 — 1, 10, 23

TEX. PEN. CODE § 22.021 — 10

TEX. PEN. CODE § 30.02 — 1, 21

TEX. R. EVID. 412 — 8-11

## SECONDARY AUTHORITIES

Brown & Rondon, TEXAS RULES OF EVIDENCE HANDBOOK (2015 ed.) — 9

**TO THE HONORABLE COURT OF APPEALS:**

**COMES NOW** Appellant, Jonathan Matthew Porterie, and submits this brief on appeal from four judgments of conviction in the 22nd Judicial District Court of Hays County, R. Bruce Boyer, presiding.[1]

## STATEMENT OF THE CASE

The State tried Appellant under four indictments, which were joined for trial: three charges of burglary of a habitation with intent to commit or attempted to commit or committed sexual assault ((1) trial court number CR-13-0076, appellate cause 03-14-00215-CR; (2) trial court number CR-13-0077, appellate cause 03-14-00216-CR; & (3) trial court number CR-13-0078, appellate cause 03-14-00217-CR); and one charge of burglary of a habitation with intent to commit improper photography (trial court number CR-13-0920, appellate cause 03-14-00214-CR).[2] CR76: 8, 24; CR77: 6, 22; CR78: 8, 25; CR920: 5, 14; *see* TEX. PEN. CODE §§ 21.15; 22.011; 30.02(a)(1), (d). A jury heard evidence and found Appellant guilty on all charges of burglary with intent to commit or attempted to commit or committed sexual assault and guilty in CR-13-0920 of the

---

[1] There are four judgments in four different cause numbers. Because they were tried together on the State's motion, the briefs submitted in each appellate case are identical.

[2] For ease of reference to the records, in the text of the brief the cases will be referred to by their trial-court cause numbers. The Clerk's records for each will be labeled by the unique portions of the trial-court cause numbers. For example, in the text the case involving improper photography (appellate cause 03-14-00214-CR) will be referred to as CR-13-0920 and its clerk record will be cited as CR920: xx.

lesser-included offense of improper photography. CR76: 98; CR77: 94; CR78: 100; CR920: 59; RR7: 107-08.[3] This appeal followed.

**ISSUES PRESENTED**

**ISSUE I**

**The improper photography statute is facially unconstitutional.**

**ISSUE II**

**The Court erred in excluding testimony of Michaud and Dawson under Rule 412 of the Texas Rules of Evidence.**

**ISSUE III**

**The evidence is insufficient to show that Appellant committed a burglary against Lasley because the State offered no evidence that Appellant entered her room without her effective consent.**

**ISSUE IV**

**The evidence is insufficient to show that Appellant committed a burglary against Bell because the State offered no evidence to support Appellant's identity as the person involved in that case.**

**ISSUE V**

**The evidence is insufficient to show that Appellant committed a burglary against Tippens because the State offered no evidence that Appellant lacked Tippens's effective consent to enter her room.**

**ISSUE VI**

**The evidence is insufficient to show that Appellant committed the lesser-included offense of sexual assault against Tippens because the State offered no evidence that, from Appellant's perspective, he lacked Tippens's consent to engage in sexual activity with her.**

---

[3] The jury determined punishment in these cases, but Appellant raises no punishment issue on appeal. CR76: 108, 110; CR77: 103, 105; CR78: 109-11; CR920: 68, 70; RR9: 5-7.

2

## STATEMENT OF FACTS

Appellant was a student at Texas State in San Marcos, as were the alleged victims. However, the four convictions that resulted from this trial concern four sets of evidence that are generally discrete from each other. They were tried together on the State's motions for joinder for trial. CR76: 24; CR77: 22; CR78: 25; CR920: 14. For ease of analysis, the facts will be reviewed separately under the arguments related to each conviction.

## SUMMARY OF ARGUMENT

In Cause CR-13-0920, the Court of Criminal Appeals found, after trial in a different case, that the statute under which Appellant was convicted is facially unconstitutional. As well, the trial court erred in excluding certain testimony of Michaud and Dawson under Rule 412 of the Texas Rules of Evidence. Appellant's beliefs and culpable mental state were directly at issue in the improper photography case, and knowledge of the sexual history shared between all four people involved in that case was vital for the defense.

In Cause CR-13-0076, the State offered no evidence that Appellant entered Lasley's room without her effective consent. The State failed to prove a burglary in that case.

In Cause CR-13-0077, the evidence is insufficient because the State failed to offer sufficient evidence to prove Appellant's identity as the perpetrator, and so a conviction cannot be sustained on this record.

Finally, in Cause CR-13-0078, the evidence is insufficient to show that Appellant committed a burglary against Tippens because the State offered no evidence that Appellant entered the apartment or Tippens's room without her effective consent or that, from Appellant's perspective, he lacked consent to engage in sexual contact with Tippens.

The convictions in all four causes should be reversed. In Cause CR-13-0920, the conviction should be reversed and should be remanded either for the trial court to dismiss the indictment or for a new trial on the offense of improper photography. For all three of the other convictions, this Court should render a judgment of acquittal.

**ARGUMENT**

**ISSUES I & II**

In Cause CR-13-0920, the State charged Appellant with burglary of a habitation by committing or attempting to commit the offense of improper photography. CR920: 5. The alleged victim of the burglary was Erica Michaud. CR920: 5. The jury convicted Appellant of the lesser-included offense of improper photography. CR920: 59; RR7: 107-08.

**Facts**

Bryonna Dawson, Erica Michaud, Dashawn Singletary, and Appellant were friends. RR4: 162. On August 15, 2012, Dawson and Michaud went to the Vault, a bar in San Marcos. RR4: 162. Appellant and Singletary were at the bar as well. RR4: 164-65. It was common for the four of them to be together. RR4: 190-91. At the end of the evening, they went back to Michaud's house with Singletary. RR4: 166, 197-98. Neither Michaud nor Dawson remembered inviting Appellant over. RR4: 171-73, 199-200. However, at 1:55 am Dawson texted Appellant on Michaud's phone and invited him to join them at the house. RR6: 132; RR7: 68; DX1. Dawson went to sleep in Michaud's bed while Michaud and Singletary talked nearby in the bedroom. RR4: 167. At some point, a picture was taken of the three of them in bed, asleep and naked. RR169; SX 2. Michaud testified that she did not consent to her picture being taken while sage was in bed. RR4: 203. Michaud did not invite Appellant over that night, but she believed that Dawson might have, while using Michaud's phone. RR5: 17-18, 24-25.

## ISSUE I

**The improper-photography statute is facially unconstitutional**

In this cause, the jury convicted Appellant for the lesser-included charge of improper photography under section 21.15(b)(1) of the Texas Penal Code. *See* CR920: 5, 49-50, 59. The Court of Criminal Appeals found this statute to be facially unconstitutional on September 17, 2014. *Ex parte Thompson*, 442 S.W.3d

325, 351 (Tex. Crim. App. 2014). Appellant did not raise a challenge to constitutionality of the statute in the trial court.

Under *Marin*, "systemic" rights are those rights cannot "be waived or forfeited by the parties." *Sanchez v. State*, 120 S.W.3d 359, 366 (Tex. Crim. App. 2003) (analyzing *Marin v. State*, 851 S.W.2d 275, 279-80 (Tex. Crim. App. 1993)). Therefore, an appellant may "complain that an absolute requirement or prohibition was violated, and the merits of his complaint on appeal are not affected by the existence of a waiver or forfeiture at trial." *Id*. (quoting *Marin*, 851 S.W.2d at 279-80). A criminal conviction in one case under a statute that the Court of Criminal Appeals has held unconstitutional in a different case while the appeal on the first is pending falls into this category of absolute prohibitions. *Schuster v. State*, 435 S.W.3d 362, 367 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Such "a statute is 'void from its inception' and thus cannot support a criminal conviction when the defendant challenges its constitutionality on appeal." *Id*. (citing *Karenev v. State*, 281 S.W.3d 428, 439 (Tex. Crim. App. 2009) (Cochran, J., concurring) & *Lapasnick v. State*, 784 S.W.2d 366, 368 (Tex. Crim. App. 1990).

The Court of Criminal Appeals found facially unconstitutional the portion of the improper-photography statute under which Appellant was convicted in CR-13-0920. *Ex parte Thompson*, 442 S.W.3d 325, 351 (Tex. Crim. App. 2014). This statute was void from its inception, and no preservation was required. The

Court should reverse the conviction and direct the trial court to dismiss the indictment in CR-13-0920.

## ISSUE II

**The Court erred in excluding testimony of Michaud and Dawson under Rule 412 of the Texas Rules of Evidence.[4]**

The trial court held two hearings outside the presence of the jury under Rule 412: one for some testimony of Dawson and one for some testimony of Michaud. The trial court first heard from Dawson. Dawson did not remember if she had sex with Appellant that night, but she had a sexual relationship with him before that evening. RR4: 177. In fact, on occasion all four of them—Dawson, Michaud, Singletary, and Appellant—had sex together in a group. RR4: 179-81. They had all slept in the same bed. RR4: 179. She did not think anyone took any photos or videos. RR4: 182. Some might have described the relationship between the four as an open relationship. RR4: 182-83.

Next, the trial court heard from Michaud. Michaud stated that she had stayed at Dawson's apartment in the past with Appellant, Singletary, and Dawson. RR4: 211. She had had sex with Dawson and Singletary together in the past. RR4: 211. She had consented in the past to some sexual activity with Appellant in the presence of Dawson. RR4: 214-15.

---

[4] This testimony and some photographs are part of the appellate record but under seal. On this Court's order, counsel was able to review this evidence. Because counsel reviews that evidence, this brief is submitted as containing sensitive material.

7

## Application of Rule 412

The relevant portions of Rule 412 are as follows:

In a prosecution for sexual assault or aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual behavior is also not admissible, unless:

*****
(2) it is evidence:

******

(B) of past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior which is the basis of the offense charged;

(C) that relates to the motive or bias of the alleged victim; . . . and

(3) its probative value outweighs the danger of unfair prejudice.

TEX. R. EVID. 412. First, by "its plain language, Rule 412 only applies to 'the alleged victim's past sexual behavior." *Pierson v. State*, 398 S.W.3d 406, 414 n.6 (Tex. App.—Texarkana 2013, aff'd on other grounds) (quoting TEX. R. EVID. 412). In case CR-13-920, the State indicted Appellant for burglary of a habitation with intent to commit or committed the offense of improper photography. CR920: 5. Michaud was the alleged victim of the burglary, because it was her house. RR4: 166, 197-98.

As a general rule, the State is bound by its charging decision. The State is bound by the allegations in the charging instrument. *Crenshaw v. State*, 378 S.W.3d

460, 465 (Tex. Crim. App. 2012); *Leal v. State*, 975 S.W.2d 636, 639 (Tex. Crim. App. 1998); *Doyle v. State*, 661 S.W.2d 726, 729 (Tex. Crim. App. 1983). And Rule 412 narrows the right to cross-examination only with respect to an "alleged victim," not any possible victim. TEX. R. EVID. 412.

Dawson was not the alleged victim of the burglary, and so Rule 412 had no bearing on her testimony. In addition, the jury convicted Appellant only for the lesser-included offense of improper photography. As State's exhibits 1 and 2 show, Dawson was entirely covered in the photographs that were taken. Dawson was not a victim, nor was she alleged to be the victim, of this offense. Therefore, her testimony was not subject to Rule 412 and should have been admitted.

The trial court also improperly excluded Michaud's testimony under Rule 412. Although she was the alleged victim, Rule 412 only applies to cases involving "sexual assault or aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault." TEX. R. EVID. 412. There is some authority for extending the language of the rule "whenever any part of the charged conduct involves an alleged sexual assault." Brown & Rondon, TEXAS RULES OF EVIDENCE HANDBOOK, 348 (2015 ed.) (quoting advisory committee's note to FED. R. EVID. 412). For example, Rule 412 would apply in a capital-murder prosecution when the underlying offense that enhances the murder to a capital murder was aggravated sexual assault or kidnapping with intent to commit a sexual assault. *See Boyle v.*

*State*, No. 69,743, 1991 Tex. Crim. App. LEXIS 102, at \*21-34 (Tex. Crim. App. May 15, 1991) (opinion on rehearing) (unpublished).

No part of the charge of improper photography "involves an alleged sexual assault" or an attempt to commit a sexual assault. *See* TEX. R. EVID. 412. Sexual assault or attempted sexual assault involves some sort of contact or penetration. *See* TEX. PEN. CODE §§ 22.011, 22.021. Improper photography only regulates photography or other means of the transmission of images. *See* TEX. PEN. CODE § 21.15. Without regard to whether Michaud or Dawson, or both, were victims in this case, Rule 412 simply does not apply. The trial court erred by applying Rule 412 to exclude those portions of the testimonies of Dawson and Michaud.

In any event, whether Appellant had consent to enter the house and whether he had consent to take the photographs were central issues to the defense. Defense counsel narrowly tailored the Rule 412 hearing evidence. Consent was the central issue, and the history of consent was the only topic of the Rule 412 hearings. *See* RR4: 176-89; 211-19. A rational application of the balancing test results in the conclusion that the narrowly tailored evidence was probative for the defensive theory and outweighed the potential prejudice by its admission. Even as the trial court noted, without the evidence, the jury was left misinformed about the actual nature of the relationships at issue. RR4: 101-02. By excluding the evidence, the jury was given the impression that the four people involved in the case were

friends who drank together, rather than four people in an ongoing sexual relationship.

**Harm**

The exclusion of this testimony harmed Appellant. The nature of the friendship and the ongoing relationships between Appellant, Singletary, Michaud, and Dawson were central to Appellant's defense. Yet, as a result of the Rule 412 rulings, and as noted by the trial court itself, "I don't know that you went—anybody went into a lot of detail or degree as to what 'relationship' means." RR4: 101-02. Even though Michaud denied giving consent to ever being photographed, as a result of the exclusion, the jury was denied the ability to weigh that claim against her general credibility in light of the relationships and history. RR4: 216. Certainly, the jury believed that Appellant had consent to enter the house because the jury convicted him of improper photography but acquitted him of the burglary. RR5: 17-18, 24-25. The jury only heard that these four people were friends and that they drank together. The ruling misled the jury and so bolstered the claim of non-consent with actual, court-blessed misinformation.

The trial court's Rule 412 rulings were in error and substantially harmed Appellant. The Court should reverse the judgment of conviction in CR-13-0920 and remand the case for a new trial on the lesser-included offense of improper photography.

Each of the remaining issues concern the convictions for burglary and each is a claim of insufficiency of the evidence. Legal sufficiency review is required by due process, and the standard of review is well-established: appellate courts review the sufficiency of the evidence in a criminal case by viewing all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *see Jackson v. Virginia*, 443 U.S. 307, 318 (1979). It is important to note that each conviction is based on a discrete set of facts, with little or no overlap between them, and the sufficiency issues are therefore different in each issue.

The events in these cases took place mostly at the University Club Apartments in San Marcos. RR4: 119. Each apartment in the complex consisted of a common area with four bedrooms. RR4: 125. One bedroom was downstairs and the rest were upstairs. RR4: 125. Each bedroom had its own key, and each resident individually signed a lease for the bedroom and joint responsibility for common areas. RR4: 125-26. Appellant was a resident of the complex, but he was evicted on September 7, 2012. RR4: 132-33.

## ISSUE III

**The evidence is insufficient to show that Appellant committed a burglary against Lasley because the State offered no evidence that**

**Appellant intentionally or knowingly entered her room without her effective consent.**

This issue concerns the conviction in trial court cause CR-13-0076.

Alexandria Lasley was a student at Texas State in 2012 and lived at the University Club apartments. RR5: 29-30. Appellant and Singletary lived in an apartment across the street. RR5: 50. Lasley lived in an upstairs bedroom. RR5: 30. She had dated Singletary in the past and knew Appellant. RR4: 30, 45. Jasmine Haynes lived in the downstairs bedroom and had been friends with Appellant. RR5: 30-31, 50. Haynes regularly invited Singletary and Appellant into the apartment. RR5: 57-58. According to Haynes, in Appellant's apartment his bedroom is in the same location in the layout as Lasley's is in hers. RR6: 90. Haynes believed Appellant did not like Lasley, and he had never made any attempts to make any sexual advances to her. RR6: 90. Appellant had stayed in the apartment on several occasions. RR6: 92. Doors were generally unlocked, and Lasley's door was usually left open when she was sleeping. RR6: 93.

On September 1, 2012, Haynes and Appellant were drinking at bars in San Marcos until around 2:30 a.m., when they went back to her apartment. RR6: 88. Haynes invited him to the apartment, and Appellant was going to sleep there. RR6: 88, 91. Haynes went to bed, and Appellant went to the bathroom. RR6: 88.

Lasley had been working at a bar in Austin that night. RR5: 32. When she got home, she went to bed and thought she locked her bedroom door. RR4: 32-33.

Sometime after 4:40 am, Lasley woke up because she felt a hand on her leg. RR5: 35. She started screaming. RR5: 35. She opened her eyes and saw that Appellant was the person touching her. RR5: 36. A roommate and the roommate's boyfriend ran into the room, Appellant asked that Singletary not be told about the incident, and he ran. RR5: 36-37. Lasley called Singletary and then went downstairs. RR5: 37. Appellant was still there. RR5: 37.

Around that time, Haynes woke up because Lasley was upset and standing in her doorway with Appellant, who was naked. RR6: 89-90. Appellant seemed confused and drunk. RR6: 89-90. Lasley wanted Appellant to leave, and he did. RR5: 37; RR6: 91.

The determination of effective consent to enter a building is fact-specific. *See Lee v. State*, 442 S.W.3d 569, 580 (Tex. App.—San Antonio 2014, no pet.); *Evans v. State*, 677 S.W.2d 814, 818 (Tex. App.—Fort Worth 1984, no pet.). A determination of the issue of consent to entry in burglary prosecutions often rests on circumstantial evidence. *Hathorn v. State*, 848 S.W.2d 101, 107 (Tex. Crim. App. 1992). Whether a door is open or unlocked is not necessarily determinative. *See Lee*, 442 S.W.3d at 580.

In this case, the residents of the apartment, including Haynes and Lasley, extended a general welcome to Appellant to be in the apartment. RR6: 91-93. Lasley's door was generally open, and Lasley never communicated any restrictions to Appellant. RR6: 91-93. Lasley thought she locked her door that night. RR4:

14

32-33. However, Haynes testified that was not her general habit, and there was no other sign or indication would support the idea that the door had been unlocked or forcibly opened by Appellant. RR6: 91-93. Appellant may have been confused as to where he was, but nothing in the process of entering the room would have been any different than any other occasion on which he might have entered the room with permission. *See generally* RR6: 91-93. Thus, this Court should reverse the judgment of conviction in Cause CR-13-0076.

## ISSUE IV

**The evidence is insufficient to show that Appellant committed a burglary against Bell because the State offered no evidence to support Appellant's identity as the person involved in that case.**

This issue concerns the conviction in the trial court in cause CR-13-0077.

**Facts**

Jacie Bell also lived at University Club in the fall of 2012. RR5: 83. She did not know Appellant or his name. RR5: 88.

On September 7, she was in bed when woke up and saw a man standing at the foot of her bed. RR5: 85. She jumped up and he crouched down. RR5: 86. She asked him to leave several times, he didn't move, so she got her phone to call the police. RR5: 86. The man ran downstairs. RR5: 86. Bell looked out her window but did not see anyone. RR5: 89-90. She later discovered that her front door was locked but the back door was unlocked. RR5: 91-92.

When police officers had responded to her apartment that night, they showed her the picture of only one person to help her identify who the man in her bedroom was. RR5: 71-73; 97. Bell had told officers when they arrived that the man was "a tall, thin black male with very little hair" and that "he had light-colored plaid shorts on." RR5: 72, 78. Outside in the apartment complex, the police found Appellant, who lived there, and he was wearing "Carolina blue basketball shorts." RR5: 79; SX 15. Appellant was not the only black male who lived at the complex, but officers did not detain, talk to, take pictures of, or in any other way investigate any other black males. RR5: 79. The police took his picture only because he was outside at the apartment complex, that he lived in, when they arrived. RR5: 71-73; 97. They showed Bell no other pictures than that of Appellant. RR5: 80. In trial a year and a half later, Bell identified Appellant as the person in her bedroom that night based on her memory that she "looked at him straight in the face for, like I said, over a minute. I knew it was a black male who was not wearing a shirt and a medium to small frame. And that's exactly what I told—told the police whenever I called." RR5: 92-93.

**Identification**

Improperly conducting a photographic lineup may result in an erroneous identification. *Simmons v. United States*, 390 U.S. 377, 383 (1968). For instance, if the police show a witness only one picture of a single individual, or display a series of pictures of several people in which the photo of one person recurs or is

emphasized, a danger of misidentification arises. *Id*. "Unnecessarily suggestive confrontations create an unwarranted and extremely high risk of irreparable misidentification." *Kirby v. State*, No. 05-93-00214-CR, 1995 Tex. App. LEXIS 3907, at *5-6 (Tex. App.—Dallas Mar. 15, 1995) (not designated for publication) (citing *Neil v. Biggers*, 409 U.S. 188, 198 (1972)). "Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." *Simmons*, 390 U.S. at 384. "It is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial." *United States v. Wade*, 388 U.S. 218, 229 (1967).

In this case, officers showed Bell the picture of only one person, Appellant, and pulled her outside to look only at him and nobody else. RR5: 71-73; 97. However, Bell had told officers when they arrived that the man in her room "had light-colored plaid shorts on." RR5: 72, 78. When Appellant was found moments later, he was wearing "Carolina blue basketball shorts." RR5: 79; SX 15. Appellant was not the only black male who lived at the complex. RR5: 79. Officers did not conduct any further investigation or search for anyone who actually matched the description given by Bell. RR5: 79. The police took his picture only because he

was outside at the apartment complex, that he lived in, when they arrived. RR5: 71-73; 97.

Even if the Court were to consider the evidence in the other cases tried with this one, the identification does not pass Constitutional muster. In each of the other cases, Appellant knew everyone involved. He had been invited into the residences, either on the night in question or as a general habit. In this case, the victim was a stranger and did not know Appellant. The person in her room was unknown to her. Entry had been through a backdoor that was left unlocked by mistake. There is no common scheme or detail that links Appellant actions in the other offenses to the offense that Bell suffered. In fact, consideration of the other offenses compounds the error made by law enforcement in this case by ignoring the facts of this case to link Appellant from the others. Thus, the jury was lead to the same unnecessarily suggestive identification that Bell was.

The likelihood of irreparable misidentification violates a defendant's due process rights. *Simmons*, 390 U.S. at 384. Thus, the Constitution requires appellate courts to reverse convictions that are directly or indirectly based on a pretrial identification "so impermissibly suggestive it created a very substantial likelihood of irreparable misidentification." *Id*. The Court should therefore reverse the judgment of conviction in Cause CR-13-0077.

## ISSUE V

**The evidence is insufficient to show that Appellant committed a burglary against Tippens because the State offered no evidence that Appellant lacked Tippens's effective consent to enter her room.**

## ISSUE VI

**The evidence is insufficient to show that Appellant committed the lesser-included offense of sexual assault against Tippens because the State offered no evidence that, from Appellant's perspective, he lacked Tippens's consent to engage in sexual activity with her.**

These issues concern the conviction in trial court cause CR-13-0078.

**Facts**

In November 2012, LeTesha McDuffie was living in an apartment at University Club. RR5: 113-14. She had three roommates, including Christian Tippens and Dahlia Zuniga. RR5: 114, 138, 189. McDuffie and Zuniga knew Appellant through Haynes. RR5: 115, 141. Appellant often came to the apartment to visit Tippens. RR5: 116. He was living with Singletary at the time but had been evicted from his lease. RR5: 116-17, 133. McDuffie, Tippens, and Zuniga did not normally lock the front door but rather had an open-door policy with friends, including Appellant. RR5: 128, 134, 142, 153-54.

On November 4, McDuffie, Tippens, Haynes, and another friend went to some bars in Austin. RR5: 117-21, 190-91. When they got home later that night, they saw Appellant driving into the parking area in front of the apartment. RR5: 122. They greeted Appellant then went into their own apartments. RR5: 125.

19

According to McDuffie, Appellant walked toward Singletary's apartment. RR5: 125. According to Haynes, Appellant walked with McDuffie and Tippens into their apartment. RR6: 100. Although she seemed intoxicated, Tippens walked in the parking lot by herself, into the apartment by herself, up the stairs by herself, and into her bedroom by herself. RR5: 125-26. McDuffie changed clothes and then drove to Cabana Beach. RR5: 132.

Zuniga had stayed home with a friend and the friend's daughter. RR5: 148. She heard the others come home, and she locked her bedroom door so nobody would disturb the child. RR5: 148-49, 158. In the morning, she went into the common area and found Tippens crying. RR5: 150. Police were also there, and the front door was open. RR5: 150. After the police left, she took Tippens to the hospital. RR5: 152-53.

Tippens did not remember the ride from Austin back to San Marcos. RR5: 193. Her first memory after leaving Austin was being in her bathroom and throwing up because of her intoxication. RR5: 193-94. She saw Appellant in the doorway to her bathroom. RR5: 194. She asked him why he was there, and he responded that he was "protecting [her] from dreadheads." RR5: 195. She next remembers being on her bed with Appellant nearby, who was touching her. RR5: 196. She passed out again and then awoke with his penis inside her. RR5: 196. She told him it hurt. RR5: 197. When the sexual encounter ended, she took a shower.

RR5: 198. Afterwards, Appellant was gone. RR5: 198. She did not remember if she told Appellant if she consented or not to the sexual encounter. RR5: 219-20.

In the morning another friend came into her room to wake her. RR5: 199. Tippens was naked. RR5: 199. She called the police then went to the hospital for a SANE exam. RR5: 200; RR6: 34-74. After the event, Tippens no longer had any relationship with her roommates. RR5: 203-04.

**Issue IV: Burglary**

To convict Appellant of burglary, the State had the burden to prove that he entered Tippens's room without her effective consent. TEX. PEN. CODE § 30.02; *see* CR78: 8, 93. The gravamen of the offense is the entry itself, and therefore if the entry was with the effective consent of Tippens, no burglary occurred. *See Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006); *DeVaughn v. State*, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988). "Consent" means "assent in fact, whether express or apparent. TEX. PEN. CODE § 1.07(a)(11).

Finally, although the State charged Appellant broadly under section 30.02 of the Penal Code, it abandoned the allegation that Appellant entered Tippins's room with the intent to sexually assault her. *See* CR78: 93. The Court only charges the jury to determine in Appellant entered her room and "attempted to commit or committed" sexual assault, thus limiting the jury's consideration to section 30.02(a)(3) of the Penal Code. As a result, Appellant's intent at the time of entry is the defining evidentiary point and is independent of the question of whether he

committed or attempted to commit a sexual assault while inside. *See Espinoza v. State*, 955 S.W.2d 108, 111 (Tex. App.—Waco 1997, pet. ref'd). In other words, it does not matter what Appellant intended to do when he entered, only whether his entry into the apartment was with consent. *See id*.

In this case, the record evidence is straightforward. McDuffie, Tippens, and Zuniga did not normally lock the front door. RR5: 128, 134, 142, 153-54. They had an open-door policy with friends, including Appellant. RR5: 128, 134, 142, 153-54. Appellant often came to the apartment to visit Tippens. RR5: 116. There had been other people in the parking lot that night when the group returned from Austin. RR6: 100. When Tippens saw Appellant in the doorway to her bathroom. she asked him why he was there. RR5: 194-95. He responded that he was "protecting [her] from dreadheads." RR5: 194-95. Tippens did not indicate that Appellant should not have been there or that she was surprised or upset that he was there. *See* RR5: 194-95.

This record lacks any evidence to show that Appellant lacked consent to be in the apartment or to be in Tippens's room at the time of his entry. Rather, it shows that he did have consent. The Court should reverse the conviction in this case and render a judgment of acquittal or reform the judgment, dependent on the Court's resolution of Issue VI, below.

**Issue V: Sexual Assault**

The evidence is insufficient to support a conviction for burglary because Appellant had effective consent for his entry, as argued above. Therefore, the Court must next turn to the proper remedy. In deciding whether to reform the judgment to reflect a conviction for a lesser-included offense, the Court "must answer two questions: 1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense?" *Thornton v. State*, 425 S.W.3d 289, 300 (Tex. Crim. App. 2014). Appellant concedes that the answer to the first question is affirmative, because the lesser-included offense of sexual assault was included in the jury charge. *See* CR78: 93-94. Therefore, the only question is whether the evidence is sufficient to support a sexual-assault conviction. The evidence is insufficient to support a finding that the sexual encounter was nonconsensual.

Generally, a conviction for sexual assault could be "supportable" on the uncorroborated testimony of the victim. *See* TEX. CODE CRIM. PROC. art. 38.07(a). However, in this case the issue is whether the sexual encounter was consensual from Appellant's perspective, and the issue of consent must be determined from the totality of the circumstances in each particular case. *See Brown v. State*, 576 S.W.

2d 820, 823 (Tex. Crim. App. 1978); R5: 195. In this case, consent could be analyzed from three different positions. First, from the general definition, consent is "assent in fact, whether express or apparent. TEX. PEN. CODE § 1.07(a)(11). Next, if Appellant did not receive consent and Appellant knew "the other person is unconscious or physically unable to resist" or if he knew that "the other person is unaware" of the sexual encounter. TEX. PEN. CODE §§ 22.011(b)(3), (5).

When the group returned from Austin and saw Appellant, Tippens walked in the parking lot by herself, into the apartment by herself, up the stairs by herself, and into her bedroom by herself. RR5: 125-26. Appellant had not been with then that night and so did not know anything about how much she had to drink. RR5: 117, 122. He could only have judged the situation by what he saw. Tippens herself did not remember if she told Appellant if she consented or not to the sexual encounter. RR5: 219-20. There is no evidence in this record that Tippens did not consent to the sexual encounter, because she did not remember if she had. RR5: 219-20. There is no evidence in this record that Appellant knew that Tippens was unconscious, unaware, or unable to resist. She had spoken to him in her bathroom, she had been walking and talking in the parking lot, and she had been able to walk upstairs to her bedroom. RR5: 125-26. The fact that she was upset the morning after it happened has no bearing on what Appellant knew when it happened.

The evidence is insufficient to support a conviction for for the lesser-included offense sexual assault in Cause CR-13-0078. Therefore, neither is the

evidence sufficient to support a burglary conviction. The Court should reverse the conviction and render a judgment of acquittal.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Court reverse the judgments of conviction of the district court. In Cause CR-13-0920 (appellate cause 03-14-00214-CR), the case should be remanded either for the trial court to dismiss the indictment or for a new trial on the offense of improper photography. For all three of the other convictions, this Court should render judgments of acquittal.

Appellant prays for any such further relief to which he may be entitled.

Respectfully submitted,

/s/ James Gerard McDermott, II

James Gerard McDermott, II
**Thompson Salinas Rickers & McDermott, LLP**
8140 N. Mopac
Westpark 4, Suite 250
Austin TX 78759
512.201.4099
512.298.1129 (facsimile)
james@centraltexaslawyers.com
*Attorney for Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Texas Rule of Appellate Procedure 9.4. The computer-generated word count for this document is 5782 words, including headers and footnotes.

/s/ James Gerard McDermott, II
James Gerard McDermott

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served, by agreement, by email and by electronic service on January 11, 2015 to:

Brian Clarke Erskine
State Bar No. 24074182
Assistant Hays County District Attorney
712 South Stagecoach Trail, Suite 2057
San Marcos TX 78666

/s/ James Gerard McDermott, II
James Gerard McDermott